STATE OF NORTH CAROLINA v. ERICH HAROLD CABE

No. COA97-1151

(Filed 3 November 1998)

**1. Evidence— expert testimony—premeditation and deliberation—door opened by defendant**

The trial court did not err in a first-degree murder prosecution by admitting expert testimony from the State concerning whether defendant acted with premeditation and deliberation. Defendant opened the door to the State's otherwise inadmissible expert testimony by specifically questioning his own expert as to premeditation and deliberation.

**2. Criminal Law— defendant's argument—punishment**

There was no prejudicial error in a first-degree murder prosecution where the court erroneously sustained the State's objection to defense counsel's closing argument concerning punishment, but defense counsel had informed the jury during voir dire without objection that defendant's punishment if found guilty would be life without parole and defense counsel added a similar reference after the objection was sustained to his closing argument. The jury received sufficient notice of the serious consequences defendant faced if found guilty of first-degree murder.

Appeal by defendant from judgment dated 12 November 1996 by Judge Zoro J. Guice, Jr. in Rutherford County Superior Court. Heard in the Court of Appeals 18 August 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Belser & Parke, P.A., by David G. Belser, for defendant appellant.*

GREENE, Judge.

Erich Harold Cabe (Defendant) appeals from entry of judgment on a jury verdict finding him guilty of first-degree murder.

On 6 September 1995, Defendant shot and killed Steven Curtis Landis (Landis) in a grocery store parking lot. While questioning the prospective jurors for Defendant's trial, defense counsel, without objection from the State, stated: "[Defendant is] charged with the crime of First Degree Murder which is punishable under our law of North Carolina with life without parole; those are the stakes in this case."

At trial, the evidence tended to show that, after shooting Landis, Defendant waited for the police to arrive. When the first officer arrived on the scene, Defendant walked over to the officer, surrendered, and stated: "I'm the one that did it." Defendant testified:

[A]ll I remember, like I said, from the time I seen him getting out of the car, the next thing I remember was hearing the pow pow; and then I remember, the only thing I do remember about [Landis], he dropped to his knees and then other than that, you know, the next thing I know I was standing outside with a gun in my hand.

Dr. Anthony Sciara (Dr. Sciara), a psychologist hired by Defendant, testified that Defendant was under a great deal of stress during the weeks preceding the murder, and that testing of Defendant revealed:

[Defendant's behavior was] consistent with somebody who really [is] in a significant stress overload state that has been building for a long time, a perceived threat from things that have been said before, a distortion of what's actually occurring, and then does what we call dissociates; that is, that they act automatically. They're not thinking consciously, "I'm doing X, Y, and Z; I'm pulling a trigger." There's no thought about that, it is an automatic action that occurs. And this occurs with an overload of emotions and a distortion, both of which are incredibly present with [Defendant].

Dr. Sciara stated that "[d]issociation is often a very brief period of time and, again, it relates to significant stress overload, [and a] highly emotional provoking situation, all of which were there with [Defendant]." Defense counsel asked Dr. Sciara whether "[Defendant's] behavior as has been described to you on the night of September the 6th [was] consistent with someone who has premeditated and deliberated upon those actions?" Dr. Sciara responded:

> Well, I really have to answer that in kind of two ways; a deliberate action to choose to drive to the location, to make the phone call, to say let's get it over with, absolutely. That was all deliberate, that was conscious, that was directed if you would. The action of shooting, on the other hand, would be inconsistent with a deliberate action but would be more consistent with an impulse based on distortion, an impulse based on I'm defending myself, protecting myself, and that dissociated state, so I'd really have to answer it two ways.

Dr. Nicole Wolfe (Dr. Wolfe), a forensic psychiatrist, testified during the State's rebuttal as follows:

> Q: Now, based on your understanding of the facts of this crime and taking into account the factors that you just mentioned to us about planning and so forth, are those suggestive to you one way or the other as to whether or not this crime was premedicated [sic] and deliberated?
>
> A: The fact that he met the victim with a gun definitely suggested some element of forethought, I mean cause you don't just drive around with a gun in your car for no reason.
>
> Q: Were you aware of the fact that he called the victim moments before the killing and told him to come to the location?
>
> A: Yeah, he said that he had driven to Forest City and actually saw [Landis] driving around, and then waited for him to get home to call him . . . and said, "Meet me in the [grocery store] parking lot."
>
> Q: Is that suggestive to you of premeditation and deliberation?
>
> A: Certainly there's some element of it, yes.
>
> Q: Dr. Wolfe, did you find anything at all in your testing of [Defendant] that in your opinion would negate the element of premeditation and deliberation?

A: The question of how harassed [Defendant] was is still very unclear to me. If somebody were extremely harassed and fearful for their life, then there would be some element of over-reacting to a stressor. But it doesn't remove, like I said, putting the gun in your car and telling somebody to meet me at such and such a location.

During closing arguments, defense counsel argued to the jury:

[The State is] gonna ask you, I believe, to find [Defendant] guilty of First Degree premeditated and deliberated murder and ask you to send him to prison for the rest of his life without parole. That's what this case is all about, that's what they're gonna ask you to do. I want you to think about that decision because if you check block one, that's the result. There's no discretion of the Court. The Court has to impose life without parole.

The prosecutor objected on the ground that "the Court's sentencing is not for [the jury's] consideration." The trial court stated: "Ladies and gentlemen of the jury, the matter of sentencing is for the Court and you're not to concern yourself with that." Defense counsel then continued his closing argument, stating: "Thank you, Your Honor, but that's what's going to happen if you find him guilty of First Degree premeditated murder. I want you to think about that . . . ."

The jury returned a verdict of guilty of first-degree murder, and the trial court sentenced Defendant to life imprisonment without parole.

The issues are whether: (I) the admission of Dr. Wolfe's testimony concerning Defendant's premeditation and deliberation was error; and (II) Defendant had the right to inform the jury of the punishment for first-degree murder.

I

**[1]** "Premeditation" and "deliberation" are legal terms of art. *State v. Rose*, 323 N.C. 455, 460, 373 S.E.2d 426, 429 (1988). Medical expert opinion testimony as to whether these elements were met by a defendant's behavior is inadmissible. *Id.* at 460, 373 S.E.2d at 430. Our courts, however, "wisely permit[] evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself." *State v. Hudson*, 331 N.C. 122, 154, 415 S.E.2d 732, 749 (1992), *cert. denied*, 506 U.S. 1055, 122 L. Ed. 2d 136, *reh'g denied*, 507 U.S. 967, 122 L. Ed. 2d 776 (1993).

In this case, the testimony elicited by the State from its expert witness, Dr. Wolfe, was inadmissible expert opinion testimony that Defendant had acted with at least "some" premeditation and deliberation when he shot and killed Landis. The State elicited this testimony, however, only as rebuttal evidence following similarly inadmissible testimony from Defendant's expert witness. Defense counsel asked Dr. Sciara if Defendant's behavior "on the night of September the 6th [was] consistent with someone who has premeditated and deliberated upon those actions?" Dr. Sciara replied that "[t]he action of shooting . . . would be inconsistent with a deliberate action . . . ." Defendant therefore "opened the door" to the State's otherwise inadmissible expert testimony by specifically questioning his own expert as to premeditation and deliberation. Under these circumstances, the trial court did not err in allowing Dr. Wolfe's testimony.

II

[2] The punishment for first-degree murder committed by an adult is "death or imprisonment in the State's prison for life without parole . . . ." N.C.G.S. § 14-17 (Supp. 1997). The defendant has the right to inform the jury of the punishment prescribed for the offense for which he is being tried. N.C.G.S. § 7A-97 (1995) ("In jury trials the whole case as well of law as of fact may be argued to the jury."); *State v. Barber*, 93 N.C. App. 42, 48, 376 S.E.2d 497, 500, *disc. review denied*, 328 N.C. 334, 381 S.E.2d 775 (1989). Indeed, defense counsel may "read or state to the jury a [relevant] statute or other rule of law . . . *including the statutory provision fixing the punishment for the offense charged.*" *State v. Britt*, 285 N.C. 256, 273, 204 S.E.2d 817, 829 (1974) (emphasis added). "[S]uch information serves the salutary purpose of impressing upon the jury the gravity of its duty." *State v. Walters*, 294 N.C. 311, 314, 240 S.E.2d 628, 630 (1978). Providing "[n]otice to the jury of the consequences [of the verdict reached] is the right protected by [law]." *State v. Buckner*, 342 N.C. 198, 216, 464 S.E.2d 414, 424 (1995), *cert. denied,*—— U.S. ——, 136 L. Ed. 2d 47 (1996) (holding that where the jury was "repeatedly and specifically" informed as to the punishment for the crime charged, the court's subsequent instructions to disregard arguments about punishment were not so prejudicial as to require a new trial).

Defense counsel's closing argument comments in this case were a correct statement of the punishment prescribed for first-degree murder and therefore constituted a proper argument. It follows that

the trial court erred in sustaining the State's objection.[1] Such an error requires a new trial, however, only where there is a reasonable possibility that a different result would have been reached by the jury had the error in question not been committed. N.C.G.S. § 15A-1443(a) (1997). During *voir dire* of this case, defense counsel informed the jury without objection from the State that Defendant's punishment, if found guilty of first-degree murder, would be "life without parole." In addition, following his closing argument comments (that Defendant faced a mandatory sentence of life without parole if convicted of first-degree murder) and the trial court's statement sustaining the State's objection, defense counsel stated, without any additional objection: "[B]ut that's what's going to happen if you find him guilty of First Degree premeditated murder. I want you to think about that . . . ." The jury therefore received sufficient notice of the serious consequences Defendant faced if found guilty of first-degree murder. Accordingly, there is no reasonable possibility that a different result would have been reached by the jury had the error in question not been committed, and Defendant is not entitled to a new trial.

No error.

Judges JOHN and TIMMONS-GOODSON concur.

---

1. The trial court's statement to the jury that "sentencing is for the Court" is a correct statement of the law. Although arguably this statement did not technically sustain the State's objection, the State concedes that the trial court sustained its objection. In any event, the trial court's statement, in this context, would have appeared to a reasonable juror to sustain the State's objection.