STATE OF NORTH CAROLINA v. ROBERT HUGH HEWSON

No. COA06-433

(Filed 20 March 2007)

1. **Homicide— first-degree murder—short-form indictment constitutional**

    A short form indictment used to charge a defendant with first-degree murder is constitutional.

2. **Confessions and Incriminating Statements— public safety exception—Miranda warnings not required**

    The public safety exception to the Miranda rule applied to statements made by defendant in response to an officer's question to defendant at a murder scene, "Is there anyone else in the house, where is she?" where officers were responding to a report of a woman being shot by her husband, the shooter was still on the scene in front of the house when officers arrived, an officer testified that she was not sure whether defendant was armed and she was unaware of the condition of the victim, and the officer asked no other questions of defendant after defendant was secured and other officers gained entry into the house.

3. **Evidence— 911 call—nontestimonial evidence**

    The admission of a murder victim's call in which she stated, in response to the 911 operator's questions, that she was being shot by defendant did not violate defendant's right of confrontation under the *Crawford* decision because the victim's statements were not testimonial when the colloquy between the victim and the 911 operator was not designed to establish a past fact but to describe current circumstances requiring police assistance.

**4. Evidence— hearsay—business records exception—911 event report**

The trial court did not err in a first-degree murder, discharging a weapon into occupied building, and violating a domestic protective order case by admitting into evidence the 911 event report even though defendant contends it was inadmissible hearsay and violated his confrontation rights, because: (1) the event report was admissible as a business record under N.C.G.S. § 8C-1, Rule 803(6); and (2) a 911 operator testified that the event report was kept in the ordinary course of business, that all the entries were made while on the 911 call with the victim, and that the operator was present when all entries were made.

**5. Evidence— hearsay—business record exception—pass on information form used by security guards in victim's neighborhood**

The trial court did not err in a first-degree murder, discharging a weapon into occupied building, and violating a domestic protective order case by admitting evidence of the pass on information form used by the security guards in the victim's neighborhood which stated that the victim's husband had been threatening her even though defendant contends it was inadmissible hearsay and violated his confrontation rights, because: (1) the form was properly admitted as a business record under N.C.G.S. § 8C-1, Rule 803(6); (2) the chief security guard testified that the form was kept in the ordinary course of business and that he was the custodian of the record; and (3) the statements made by the victim to the security chief, as recorded on the form, were nontestimonial.

**6. Evidence— hearsay—existing state of mind exception**

The trial court did not err in a first-degree murder, discharging a weapon into occupied building, and violating a domestic protective order case by admitting, during the testimony of the chief security guard, a statement made by the victim that she would be going out of town the following week, because: (1) defendant stated no grounds for his objection; (2) constitutional error will not be considered for the first time on appeal; and (3) the statement was admissible under the N.C.G.S. § 8C-1, Rule 803(3) existing statement of mind exception to the hearsay rule.

### 7. Evidence— photographs of homicide victim—illustrative purposes

The trial court did not abuse its discretion in a first-degree murder case by allowing the State to introduce photographs of the victim's body and photographs taken at the victim's autopsy because: (1) photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible, or revolting, so long as they are used for illustrative purposes and their excessive or repetitious use is not aimed solely at arousing the passions of the jury; (2) the photographs were used in the course of testimony from the officers responding to the scene, and from the testimony of the medical examiner; and (3) the State did not offer an excessive number of photographs, and nothing suggested the photographs were offered solely to arouse the passions of the jury.

### 8. Venue— pro se motion to change—no right for defendant to appear both by himself and by counsel

The trial court did not err in a prosecution for first-degree murder and other crimes by refusing to hear defendant's pro se motion to change venue because, having elected for representation by appointed counsel, defendant cannot also file motions on his own behalf or attempt to represent himself.

### 9. Jury— selection—broadcast of 911 call prior to selection

The trial court did not abuse its discretion in a prosecution for first-degree murder and other crimes by denying defendant's motion to continue based on the broadcast of the victim's 911 call prior to jury selection, because: (1) each juror who served indicated an ability to render a fair verdict based on facts and evidence presented in the courtroom and not from any other source; (2) defendant did not exhaust his peremptory challenges and identified no objectionable juror who sat on his jury; and (3) defendant overemphasized the importance of the 911 call when the State presented dozens of witnesses, gunshot residue was found on defendant's hands, defendant's blood was recovered from the gun, blood recovered from the inside of the house matched only the victim, blood recovered from the outside of the windowsills matched defendant, bullets from the gun found at the scene matched the bullets recovered from the victim's body, and bullet casings were found outside the house.

**10. Indictment and Information— amendment—surname**

The trial court did not err by denying defendant's motion to dismiss the indictments for first-degree murder and firing into an occupied dwelling based on the indictments containing the incorrect name of the victim, or by allowing the State to amend the indictments from "Gail Hewson Tice" to "Gail Tice Hewson" after the State rested its case, because: (1) changes to the surname of a victim are not an amendment for purposes of N.C.G.S. § 15A-923(e); (2) at no time in the proceeding did defendant indicate any confusion or surprise as to whom defendant was charged with having murdered; and (3) during a pretrial motion made by defendant, he refers to "Gail Hewson, also known as Gail Tice."

**11. Homicide— first-degree murder—failure to instruct on manslaughter**

The trial court did not err by refusing to instruct the jury on manslaughter as a lesser-included offense of first-degree murder, because: (1) contrary to defendant's assertion, the mere existence of a domestic violence protective order does not permit the inference that defendant acted in the heat of passion; and (2) defendant points to no evidence that would support a jury verdict of manslaughter.

**12. Homicide— second-degree murder—failure to instruct on punishment**

The trial court did not err in a first-degree murder case by failing to instruct the jury on the penalty for second-degree murder after the jury sent a note to the trial court requesting the information, because: (1) defendant did not choose to exercise his right to inform the jury of the punishment for the possible verdicts; (2) the trial court did not prevent defendant from making any argument regarding punishment; and (3) N.C.G.S. § 7A-97 does not obligate the trial court to inform the jury of applicable punishments, but rather permits a defendant to do so.

**13. Firearms and Other Weapons; Homicide— first-degree murder—discharging weapon into occupied building—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of first-degree murder and discharging a weapon into an occupied building at the close of the State's evidence and at the close of all evidence, because the evidence

showed that: (1) defendant entered the victim's neighborhood and fired multiple shots into her home from outside; (2) defendant was arrested in front of the house eight minutes after the victim placed a 911 call; and (3) bullets from defendant's gun matched those found inside the house and recovered from the victim's body.

Appeal by Defendant from judgments dated 8 November 2005 by Judge Ernest B. Fullwood in Superior Court, New Hanover County. Heard in the Court of Appeals 6 December 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Alexander McC. Peters, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Charles K. McCotter, Jr., for Defendant.*

McGEE, Judge.

Robert Hugh Hewson (Defendant) was indicted on charges of first-degree murder, discharging a weapon into an occupied building, and violating a domestic violence protective order. On the first-degree murder charge, the jury returned a guilty verdict based upon malice, premeditation, and deliberation, and based upon felony murder, with the underlying felony being discharging a weapon into occupied property. The jury also found Defendant guilty of each of the remaining two charges. The trial court sentenced Defendant to life imprisonment without parole on the first-degree murder charge, and a minimum of twenty-five months and a maximum of thirty-nine months in prison on the remaining charges. Defendant appeals.

The trial court heard pre-trial motions on 31 October 2005. Defendant made several motions relevant to the issues before us. First, Defendant moved to dismiss the indictment charging Defendant with first-degree murder. Defendant contended the short form indictment was unconstitutional, but conceded that case law from our Supreme Court did not support his position. The trial court denied Defendant's motion.

Next, Defendant moved to suppress statements he made to police at the time he was arrested. Defendant argued the statements were obtained in violation of his *Miranda* rights. The trial court concluded that the public safety exception to *Miranda* applied, and denied Defendant's motion.

STATE v. HEWSON

[182 N.C. App. 196 (2007)]

Defendant also moved to suppress: (1) the recorded 911 call made by the victim; and (2) the event report taken by 911 personnel detailing the actions taken in response to the victim's 911 call as barred by *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). The trial court found that the statements made to the 911 operator by the victim were non-testimonial in nature and denied Defendant's motion. The trial court also admitted the event report.

Defendant filed a *pro se* motion for change of venue. Defendant contended that "prejudicial, slandering and derogatory comments" were made by the media, which required a change of venue pursuant to N.C. Gen. Stat. § 15A-957. To hear the motion, the trial court required that defense counsel make the motion, but defense counsel declined to do so. Thus, the trial court did not rule on Defendant's *pro se* motion for change of venue.

The next morning as jury selection was to begin, Defendant learned that local news media had broadcast the 911 call the previous evening, and again that morning. Defendant moved for a continuance, or in the alternative, for an order prohibiting all parties from disclosing evidence to the media. Defendant contended that selecting the jury after "the entire prospective jury pool" had "witnessed" the 911 call violated Defendant's due process right to a fair and impartial jury. The trial court denied Defendant's motion to continue. The trial court found that the rules of ethics precluded the parties from discussing the facts of the case during the trial, and allowed Defendant's motion to prohibit the parties from disclosing evidence to the media to the extent the rules of ethics precluded such action.

At trial, Carrie Bennett (Bennett), a 911 dispatcher for New Hanover County, testified that she answered the victim's 911 call at 6:44 a.m. on 29 September 2004. Bennett stated she was only able to communicate with the victim for the first few seconds of the call, although Bennett remained on the line for approximately seventeen minutes. Over Defendant's renewed objection, a recording of the 911 call was played for the jury. During the 911 call, the victim reported that she had been shot and was bleeding. She said, "[m]y husband is shooting me." Bennett testified that while she was on the line she could hear shots being fired.

To illustrate Bennett's testimony, the State moved to admit an event report which detailed the timeline of the 911 call and the response made by law enforcement. The report included entries made by various 911 personnel. Defendant objected to the admission of the

event report, arguing that the report contained inadmissible hearsay. The trial court overruled Defendant's objection and admitted the event report as a business record.

Officer Adrienne Anderson (Officer Anderson) of the Wilmington Police Department, testified that she responded to a report of a shooting in progress at 1721 Fontenay Place on 29 September 2004. Officer Anderson was the first person to arrive at the house at 6:52 a.m. Officer Mark Lewis (Officer Lewis) arrived shortly thereafter. Officers Anderson and Lewis observed Defendant in front of the house with his hands over his head. Officer Anderson ordered Defendant to lie face down on the ground. Defendant complied and yelled, "I've just had open heart surgery." Officer Anderson then placed Defendant in handcuffs. Officer Anderson asked Defendant: "Is there anybody else in the house, where is she?" Defendant said he had not been in the house. Officer Anderson asked Defendant where the gun was located. Defendant said something Officer Anderson was unable to understand, and then motioned his head toward the front door of the house.

Officer Lewis testified that he responded to a call of "a woman being shot by her husband and the shooter was still on the scene." When Officer Lewis arrived at 1721 Fontenay Place, he saw Defendant in front of the house. Defendant raised his hands above his head and Officers Lewis and Anderson shouted for Defendant to lie down on the ground. Defendant complied. Officer Lewis testified that at that time the officers did not know where the gun was located. When Officer Anderson handcuffed Defendant, Officer Lewis turned his attention to locating the victim. He went to the front door of the house, observed that the door was locked, and saw a revolver lying to the left of the door, on the outside of the house. Officer Lewis and Officer Kevin Tully (Officer Tully) knocked out a portion of the door to gain access to the house. Officer Lewis saw the victim lying on the floor with a phone in her hand. Her head was surrounded by a large pool of blood. Once the officers had secured the scene, emergency personnel entered the house and pronounced the victim dead.

Officer Tully testified that "[t]here were bullets laying all over the house[.]" During the course of the investigation, Officer Tully made a protective sweep of the house and found several broken windows.

Peggy Creech (Creech), an assistant clerk of court for Superior Court of New Hanover County, testified that the victim filed a complaint against Defendant on 9 September 2004 and requested a do-

mestic violence protection order. A ten-day protective order was entered, and a hearing was held on 17 September 2004. At the hearing, the order was extended until 18 March 2005. The order prohibited Defendant from entering the victim's residence, except in the presence of a law enforcement officer to retrieve personal effects, and prohibited Defendant from "possessing, owning or receiving a firearm" during the effective time of the order.

The chief of security in the victim's neighborhood, Russell James (Chief James), testified that the guards used "pass on information" forms to stay informed about events occurring in the neighborhood. He testified that the records were kept in the ordinary course of business, and that he and the other guards relied on the accuracy of the forms to keep the neighborhood safe. Over Defendant's objection, Chief James read the following entry from a pass on information form: "[The victim's] husban[d] has been threat[en]ing her. [I]f anyone calls him in, call the person back to be sure[] he is not trying to call [him]self in[.] Per Russell." Chief James also testified that when he spoke with the victim sometime between 21 September 2004 and 25 September 2004, she told him she was going out of town the following week.

Further facts will be set out in the opinion as needed.

At the close of the State's evidence, Defendant moved to dismiss each of the charges against him. The trial court denied Defendant's motions. Defendant did not present any evidence at trial and renewed his motions to dismiss at the close of all the evidence.

During the charge conference, Defendant requested that the trial court instruct the jury on manslaughter. The trial court denied Defendant's request. The verdict sheet submitted to the jury regarding the first-degree murder charge permitted the jury to find Defendant guilty of first-degree murder, second-degree murder, or not guilty.

During the jury's deliberations, the jury requested to know the penalty for second-degree murder. The trial court informed the jury that its job was to determine guilt or innocence in accordance with the instructions given, and that punishment was the province of the trial court.

## I. Short Form Indictment

**[1]** Defendant first argues that the short form indictment used by the State was unconstitutional under *Jones v. United States*, 526 U.S. 227,

143 L. Ed. 2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000). Defendant acknowledges that our Supreme Court has upheld the use of the short form indictment. Our Supreme Court noted

> this Court has recently held that the short-form indictment alleges all necessary elements of first-degree murder, is sufficient to indict on any theory of murder, does not violate equal protection, and need not allege aggravating circumstances[.] [The] [d]efendant has neither advanced new arguments nor cited any new authority to persuade us to depart from these holdings.

*State v. Mitchell*, 353 N.C. 309, 328-29, 543 S.E.2d 830, 842 (internal citations omitted), *cert. denied, Mitchell v. North Carolina*, 534 U.S. 1000, 151 L. Ed. 2d 389 (2001). Because the same rationale applies to the present case, we overrule this assignment of error.

## II. Evidentiary Issues

Defendant brings forward several arguments relating to the trial court's decision to admit various pieces of evidence.

### A. Defendant's Statements to Police

[2] Defendant argues the trial court improperly denied his motion to suppress the statements he made to police at the time he was arrested. Defendant contends that Officer Anderson's question: "Is there anyone else in the house, where is she?" was custodial interrogation in violation of *Miranda*, and that Defendant's response was improperly admitted. The State maintains the trial court properly concluded the "public safety exception" applied. We agree with the State.

"*Miranda* warnings are required only when a defendant is subjected to custodial interrogation." *State v. Patterson*, 146 N.C. App. 113, 121, 552 S.E.2d 246, 253, *disc. review denied*, 354 N.C. 578, 559 S.E.2d 549 (2001). However, *Miranda* warnings are not required when "police officers ask questions reasonably prompted by a concern for the public safety." *New York v. Quarles*, 467 U.S. 649, 656, 81 L. Ed. 2d 550, 557 (1984). Our Supreme Court has noted that "questions asked by law enforcement officers to secure their own safety or the safety of the public and limited to information necessary for that purpose are excepted from the *Miranda* rule." *State v. Brooks*, 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994). "Police officers do not need to delay an investigation and give such warnings when their own lives or the lives of others may be in danger." *Id.*

STATE v. HEWSON

[182 N.C. App. 196 (2007)]

In *State v. Crudup*, 157 N.C. App. 657, 661, 580 S.E.2d 21, 25 (2003), this Court noted that under *Quarles*, the public safety exception was narrow, and was "intended to neutralize volatile situations and to address situations where spontaneity rather than adherence to a police manual is necessary." In *Crudup*, the police were responding to a reported break-in. *Id.* at 658, 580 S.E.2d at 23. After the defendant was handcuffed and surrounded by multiple officers, police asked the defendant several questions about whether he resided in the home. *Id.* We concluded that the public safety exception did not apply and therefore the defendant's statements were obtained in violation of *Miranda*. *Id.* at 661-62, 580 S.E.2d at 25.

We find the present case to be distinguishable from *Crudup* and within the public safety exception. In the present case, Officers Anderson and Lewis were responding to a report of "a woman being shot by her husband and the shooter was still on the scene." When the officers arrived on the scene, they saw Defendant in front of the house. Officer Anderson testified that she was not sure whether Defendant was armed, and she was unaware of the condition of the victim. Officer Anderson asked no other questions of Defendant after Defendant was secured, and other officers gained entry into the house.

### B. 911 Call and 911 Event Report

[3] Defendant next argues that the trial court improperly admitted into evidence the recording of the victim's 911 call and the 911 event report. Defendant argues that admission of the 911 call was barred by *Crawford*.

In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. In *Davis v. Washington*, 547 U.S. ——, 165 L. Ed. 2d 224 (2006), the Supreme Court noted that

[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interro-

gation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at ——, 165 L. Ed. 2d at 237. The Court concluded that

[a] 911 call . . . and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to "establis[h] or prov[e]" some past fact, but to describe current circumstances requiring police assistance.

*Id.* at ——, 165 L. Ed. 2d at 240.

The following interaction occurred between Bennett and the victim:

Bennett: New Hanover County 911, what is the address of your emergency?

Caller: 1721 Fontenay. I've been shot.

Bennett: You've been shot?

Caller: Yes. I am bleeding. My husband keeps shooting me. My husband is shooting me. Hurry up.

Bennett: OK, ma'am, stay on the line with me okay?

Caller: Yes.

Bennett: What is your name?

Caller: Gail Hewson. H-E-W-S-O-N. I am bleeding to death. You can hear his shots.

Bennett: What is his name, ma'am?

[Labored breathing.]

Bennett: Hold on ma'am, we got help coming to you. Ma'am, we got help coming.

Applying *Davis* to the present case, we hold that admitting the victim's 911 call as evidence did not violate Defendant's rights under *Crawford*. We caution, as the Supreme Court did in *Davis*, that what begins as a conversation to elicit information needed to render emergency assistance could become testimonial and therefore inadmissible. *Id.* at ——, 165 L. Ed. 2d at 241. However, in the present case, as in *Davis*, the colloquy between Bennett and the victim was not designed to establish a past fact, but "to describe current circumstances requiring police assistance." *Id.* at ——, 165 L. Ed. 2d at 240.

Therefore, the victim's statements were not testimonial. As the Supreme Court said in *Davis*, "[The victim] simply was not acting as a *witness*; she was not *testifying*." *Id.* at ——, 165 L. Ed. 2d at 240 (emphasis in original).

**[4]** Defendant next challenges the admission of the 911 event report, arguing that the report was inadmissible hearsay and violated Defendant's confrontation rights. We disagree and conclude that the event report was properly admitted.

Business records are defined in N.C. Gen. Stat. § 8C-1, Rule 803(6) (2005) as:

Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

In *State v. Forte*, 360 N.C. 427, 435-36, 629 S.E.2d 137, 143-44, *cert. denied, Forte v. North Carolina,* —— U.S. ——, 166 L. Ed. 2d 413 (2006), the Supreme Court determined that certain reports of the State Bureau of Investigation were not testimonial, and were admissible as business records pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(6) and as public records pursuant to N.C.G.S. § 8C-1, Rule 803(8). The Court noted that, unlike testimonial statements, "business records are neutral, are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse." *Forte*, 360 N.C. at 435, 629 S.E.2d at 143. In the present case, Bennett testified that the event report was kept in the ordinary course of business, that all the entries were made while on the 911 call with the victim, and that Bennett was present when all entries were made. We conclude that the trial court properly admitted the event report, and that the record was not testimonial in nature.

## C. Pass On Information Form

**[5]** Defendant challenges the admission of the pass on information form used by the security guards in the victim's neighborhood. We conclude that the form was properly admitted pursuant to the business record exception to the hearsay rule, and that Defendant's confrontation rights were not violated as a result of its admission.

Defendant objects to the admission of the following entry included in the pass on information form: "[The victim's] husban[d] has been threat[en]ing her. [I]f anyone calls him in, call the person back to be sure[] he is not trying to call [him]self in[.] Per Russell." Although the entry was undated, the surrounding entries establish that it was made between 21 September 2004 and 25 September 2004. Defendant contends that the victim's remarks to Chief James, as recorded in the pass on information form, were (1) inadmissible hearsay, and (2) testimonial statements made in anticipation of prosecution, and were barred by *Crawford*.

Chief James testified that the pass on information form was kept in the ordinary course of business and that he was the custodian of the record. We agree with the trial court's conclusion that the record qualifies as a business record pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(6). Further, for the reasons discussed regarding the 911 event report, we find this statement to be nontestimonial, and therefore, not barred by *Crawford*.

## D. Victim's Statement to Chief James

**[6]** Defendant also challenges the trial court's decision to admit, during the testimony of Chief James, a statement made by the victim. Chief James testified that the victim told him that she would be going out of town the following week. Although Defendant objected to the State's question, Defendant stated no grounds for the objection. Accordingly, we decline to address Defendant's *Crawford* argument, because "constitutional error will not be considered for the first time on appeal." *State v. Chapman*, 359 N.C. 328, 366, 611 S.E.2d 794, 822 (2005). Furthermore, we find the statement to be properly admitted pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(3), which excepts from the hearsay rule statements pertaining to "the declarant's then existing state of mind, emotion, sensation, or physical condition[.]" *See State v. McElrath*, 322 N.C. 1, 17-18, 366 S.E.2d 442, 451 (1988) (holding that statements of "then-existing intent to engage in a future act" are admissible under N.C.G.S. § 8C-1, Rule 803(3)).

### E. Crime Scene Photographs

**[7]** Defendant argues that the trial court improperly allowed the State to introduce photographs which were "gruesome and inflammatory and had no probative value." We disagree.

"Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). Further,

> [i]n determining whether to admit photographic evidence, the trial court must weigh the probative value of the photographs against the danger of unfair prejudice to [the] defendant. This determination lies within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.

*State v. Blakeney*, 352 N.C. 287, 309, 531 S.E.2d 799, 816 (2000) (internal citations and quotations omitted) (third alteration in original), *cert. denied, Blakeley v. North Carolina*, 531 U.S. 1117, 148 L. Ed. 2d 780 (2001).

We cannot conclude that the trial court abused its discretion in admitting photographs of the victim's body, or photographs taken during the victim's autopsy. The photographs were used in the course of testimony from the officers responding to the scene, and from the testimony of the medical examiner. The State did not offer an excessive number of photographs, and nothing suggests that the photographs were offered solely to arouse the passions of the jury. This assignment of error is overruled.

### III. Motion to Change Venue

**[8]** Defendant also argues that the trial court "erred in denying . . . Defendant's *pro se* motion to change venue without a hearing[.]" Our review of the transcript reveals that the trial court did not deny Defendant's *pro se* motion, but refused to hear the motion, stating that Defendant "can't represent himself and then have a lawyer to represent him, too. . . . [A]nything that [Defendant] wishes the court to consider [should] be through his attorney." Defense counsel replied that he would not be arguing for a change of venue.

Defendant does not argue that the trial court was required to hear Defendant's motion. Indeed, our Supreme Court has noted that "[i]t has long been established in this jurisdiction that a party has the right to appear *in propria persona* or, in the alternative, by counsel. There is no right to appear both *in propria persona* and by counsel." *State v. Parton*, 303 N.C. 55, 61, 277 S.E.2d 410, 415 (1981), *overruled on other grounds, State v. Freeman*, 314 N.C. 432, 333 S.E.2d 743 (1985). Further, "[h]aving elected for representation by appointed defense counsel, [the] defendant cannot also file motions on his own behalf or attempt to represent himself. [The] [d]efendant has no right to appear both by himself and by counsel." *State v. Grooms*, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000), *cert. denied, Grooms v. North Carolina*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001). Accordingly, the trial court properly refused to hear Defendant's *pro se* motion to change venue.

### IV. Motion to Continue

**[9]** Defendant further argues that the trial court erred by denying his motion to continue based on the fact that the 911 call was "played to the entire prospective jury pool[.]" "A motion for a continuance is ordinarily within the sound discretion of the trial court, and its ruling thereon is not subject to review absent an abuse of discretion." *State v. Weimer*, 300 N.C. 642, 647, 268 S.E.2d 216, 219 (1980). Where the motion raises a constitutional issue, "the trial court's action upon it involves a question of law which is fully reviewable by an examination of the particular circumstances of each case." *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). The basis for Defendant's motion to continue was that he could not obtain a fair and impartial jury after the 911 call was played on the local news the evening and morning before jury selection began. Therefore, Defendant's motion is fully reviewable based upon the particular circumstances of this case. *Id.*

Defendant states that "there existed so great a prejudice against . . . Defendant that he could not obtain a fair and impartial trial at that time in New Hanover County." However, a review of jury selection reveals that each juror who served indicated an ability to render a fair verdict based on facts and evidence presented in the courtroom and not from any other source. Additionally, Defendant did not exhaust his peremptory challenges and identifies no objectionable juror who sat on his jury. Further, we think Defendant overemphasizes the importance of the 911 call. The State presented dozens of witnesses, including Officers Anderson and Lewis, who arrived at the scene six to eight minutes after the victim called 911

and found Defendant in front of the house. Gunshot residue was found on Defendant's hands, Defendant's blood was recovered from the gun, and blood recovered from inside the house matched only the victim, and not Defendant. Further, blood recovered from the outside of the windowsills matched Defendant. The bullets from the gun found at the scene matched the bullets recovered from the victim's body, and bullet casings were found outside the house. For these reasons, Defendant has failed to show that the trial court erred by denying his motion for a continuance based upon the broadcasting of the 911 call prior to jury selection.

## V. Motion to Dismiss Indictments

**[10]** Defendant argues the trial court erred when it denied his motion to dismiss the indictments for first-degree murder and for firing into an occupied dwelling because the indictments contained the incorrect name of the victim. Defendant also argues the trial court improperly allowed the State to amend the indictments after the State had rested its case.

On the indictments, the victim's name is stated as "Gail Hewson Tice" rather than "Gail Tice Hewson." N.C. Gen. Stat. § 15A-923(e) (2005) states that "[a] bill of indictment may not be amended." For purposes of this statutory provision, amendment means "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). Several cases from this Court have held that changes to the surname of a victim is not an amendment for purposes of N.C.G.S. § 15A-923(e). In *State v. Bailey*, 97 N.C. App. 472, 475, 389 S.E.2d 131, 133 (1990), the indictments charging the defendant alleged the victim's name to be Pettress Cebron. The trial court allowed the State's motion to amend the indictments to change the name of the victim to Cebron Pettress. *Id.* This Court concluded that the change was not an amendment for purposes of N.C.G.S. § 15A-923(e), noting that "[w]e discern no manner in which [the] defendant could have been misled or surprised as to the nature of the charges against him." *Id.* at 476, 389 S.E.2d at 133. Likewise, in *State v. Marshall*, 92 N.C. App. 398, 374 S.E.2d 874 (1988), *cert. denied*, 328 N.C. 273, 400 S.E.2d 459 (1991), we held that "the addition of the alleged victim's last name to one of the four indictments was not an amendment as it did not 'substantially alter the charge set forth in the indictment.' " *Id.* at 401-02, 374 S.E.2d at 876 (quoting *Price*, 310 N.C. at 598, 313 S.E.2d at 558). Finally, in *State v. Holliman*, 155 N.C. App. 120, 126, 573 S.E.2d 682, 687 (2002), the trial court allowed the State to change the victim's

name from "Tamika" to "Tanika." This Court held that such a change was not an improper amendment.

We acknowledge cases which have concluded that changes to the alleged victim's name have rendered an indictment fatally flawed. *See, e.g., State v. Abraham*, 338 N.C. 315, 340, 451 S.E.2d 131, 144 (1994) (finding the trial court improperly allowed the State to change the alleged victim's name from "Carlose Antoine Latter" to "Joice Hardin"); *State v. Scott*, 237 N.C. 432, 434, 75 S.E.2d 154, 155-56 (1953) (finding an indictment void where the alleged victim was referred to as "George Rogers" and "George Sanders"). In the present case, we conclude that the changes to the victim's name were more like those approved in *Bailey, Marshall*, and *Holliman*. At no time in the proceeding did Defendant indicate any confusion or surprise as to whom Defendant was charged with having murdered. In fact, in a pre-trial motion made by Defendant, he refers to "Gail Hewson, also known as Gail Tice[.]" Therefore, we overrule this assignment of error.

## VI. Jury Instructions

**[11]** Defendant argues the trial court erred when it refused to instruct the jury on manslaughter as a lesser included offense of first-degree murder.

"Where the State's evidence is clear and positive as to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the judge to refuse to instruct on the lesser offense." *State v. Peacock*, 313 N.C. 554, 558, 330 S.E.2d 190, 193 (1985). The presence of evidence supporting the desired instruction is the determinative factor. *State v. Jones*, 291 N.C. 681, 686-87, 231 S.E.2d 252, 255 (1977).

Defendant posits that the existence of the domestic violence protective order and the ongoing domestic dispute between Defendant and the victim was evidence from which the jury could have concluded that Defendant was guilty of manslaughter. We disagree. The mere existence of the protective order does not permit the inference that Defendant acted in the heat of passion. Defendant points to no evidence that would support a jury verdict of manslaughter. Therefore, the trial court properly refused to instruct the jury on manslaughter. We overrule this assignment of error.

## VII. Jury Request for Second-Degree Murder Penalty

**[12]** Defendant contends that the trial court improperly refused to instruct the jury on the penalty for second-degree murder after the

jury sent a note to the trial court requesting that information. Defendant argues that, pursuant to N.C. Gen. Stat. § 7A-97, the trial court "had the authority and obligation to advise as to the punishment range for second degree murder when requested to do so by defense counsel."

N.C. Gen. Stat. § 7A-97 has been held to give a criminal defendant "the right to inform the jury of the punishment prescribed for the offense for which [the defendant] is being tried." *State v. Cabe*, 131 N.C. App. 310, 314, 506 S.E.2d 749, 752 (1998). Where a defendant is deprived of that right, that defendant is entitled to a new trial when "there is a reasonable possibility that a different result would have been reached by the jury had the error in question not been committed." *Id.* at 314-15, 506 S.E.2d at 752.

On these facts we conclude that the trial court did not err when it refused to answer the inquiry of the jury. Defendant did not choose to exercise his right to inform the jury of the punishment for the possible verdicts. The trial court did not prevent Defendant from making any argument regarding punishment. N.C. Gen. Stat. § 7A-97 does not obligate the trial court to inform the jury of applicable punishments, but rather permits a defendant to do so. Defendant did not do so in this case. We overrule this assignment of error.

## VIII. Sufficiency of the State's Evidence

**[13]** Defendant contends that the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all the evidence. Defendant contends there was insufficient evidence to submit to the jury the charges of first-degree murder and of shooting into an occupied dwelling. We disagree.

When a defendant moves to dismiss based on insufficiency of the evidence, the trial court must determine whether there is substantial evidence of each element of the crime charged and of the defendant being the perpetrator. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citing *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). " 'Substantial evidence is evidence from which any rational trier of fact could find the fact to be proved beyond a reasonable doubt.' " *State v. Alston*, 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998) (quoting *State v. Sumter*, 318 N.C. 102, 108, 347 S.E.2d 396, 399 (1986)). When we review a trial court's decision, "[t]he evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be

drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citations omitted).

The State's evidence was sufficient to survive Defendant's motions to dismiss. Taken in the light most favorable to the State, the evidence tended to show that Defendant entered the victim's neighborhood and fired multiple shots into her home from outside. Defendant was arrested in front of the house, eight minutes after the victim placed the 911 call. Bullets from Defendant's gun matched those found inside the house and recovered from the victim's body. The State presented sufficient evidence to submit to the jury the charges of first-degree murder and of shooting into an occupied dwelling. We overrule this assignment of error.

No error.

Judges BRYANT and STEELMAN concur.