IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-308

Filed 5 November 2024

Cabarrus County, No. 21CRS51517

STATE OF NORTH CAROLINA

v.

NOLAN KIEL GRAVES

Appeal by defendant from judgment entered 21 July 2023 by Judge Eric C. Morgan in Cabarrus County Superior Court. Heard in the Court of Appeals 9 October 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General, Robert C. Montgomery, for the State.*

*Law Office of Christopher J. Heaney, by Christopher J. Heaney, for the defendant-appellant.*

TYSON, Judge.

Nolan K. Graves ("Defendant") appeals from judgment entered upon a jury's verdict and conviction of first-degree murder. We discern no error.

## I. Background

On 24 March 2021, law enforcement officers were looking for Lena Morgan ("Lena") and went to a hotel located in Kannapolis, North Carolina. The officers were seeking to serve a pending warrant on Lena's sister, Mackenzie Morgan ("Mackenzie"). While there, officers observed an SUV pull into the hotel parking lot.

The driver of the SUV was drinking something from a brown paper bag. The driver was later identified as Defendant.

The officers approached the SUV, smelled marijuana, and asked the occupants inside of the SUV to exit. Defendant and a passenger, later identified as Frederick Baldwin ("Baldwin"), exited the vehicle. The Officers observed a firearm present inside the SUV. Defendant and Baldwin were arrested and handcuffed. Lena was not present when Defendant was arrested.

During the encounter, Mackenzie came out of the hotel room. Officers did not initially arrest Mackenzie because they mistakenly believed they were executing the arrest warrant for Lena instead of Mackenzie. After the officers realized the warrant was for Mackenzie, and not Lena, they arrested Mackenzie.

While watching Defendant for at least two hours, an officer heard him say once that Mackenzie, but not Lena, had set him up for arrest. The officer did not hear him say anything about Lena. The officer assured Defendant he had not been set up, but he had been in the wrong place at the wrong time. Defendant left jail on 9 April 2021, wearing a bondsman-required ankle monitor.

On 11 April 2021, someone with the username "Jpc Cartel" sent a Facebook social media message stating: "Got popped. Stay away from Mackenzie Morgan and [L]ena [M]organ." On 13 April 2021, the same user sent the message: "Lena [M]organ got me busted." The record does not identify the messages' recipients.

Lena was charging her phone outside a convenience store on 18 April 2021.

Surveillance cameras captured someone ride by the store driving a red vehicle, shooting at and murdering Lena. The convenience store clerk believed Defendant was the shooter based upon the video footage and having seen Defendant come inside the convenience store several times a week in the year before the shooting.

After the shooting, a law enforcement officer reached Defendant's bondsman, who had access to Defendant's ankle monitor data. Later that afternoon, an officer arrested Defendant. Defendant possessed a key inside his pocket to a red Toyota Camry parked nearby.

At trial, the State introduced the Facebook messages regarding Lena and Mackenzie. The State offered a "Certificate of Authenticity of Domestic Records of Regularly Conducted Activity" from Facebook, instead of using an affidavit signed before a notary or a testifying witness, to authenticate the messages. An individual named "Adeline Ballard," signed the statement as Facebook's "Custodian of Records."

The certificate included a declaration "under penalty of perjury that the foregoing certification is true and correct to the best of [the signatory's] knowledge." Defense counsel objected to the Facebook messages on constitutional and evidentiary grounds and argued the documents were not properly authenticated and inadmissible hearsay. The trial court overruled Defendant's objections.

Testimony during the trial tended to show Defendant had another person rent a red car for him on 16 April 2021. Defendant was given the keys. The convenience store clerk also identified Defendant as the driver of the red vehicle, which drove by

the convenience store. The clerk testified Defendant typically had a handgun when he came into the store. The State also offered evidence tending to show data from the ankle monitor Defendant was wearing placed Defendant at a street intersection adjacent to the convenience store at 12:52 p.m. on 18 April 2021, the approximate place and time when Lena was shot and murdered.

The jury found Defendant to be guilty of first-degree murder. The trial court sentenced him to life imprisonment without possibility of parole. Defendant orally tendered notice of appeal.

## II. Hearsay

Defendant argues trial court erred in admitting hearsay evidence of the Facebook messages under the business records exception without allowing Defendant to confront the person who had authenticated the evidence.

### A. Standard of Review

Our caselaw is mixed regarding the proper standard of review to apply to the admission of evidence over a party's hearsay objections, particularly when the hearsay objection relates to the authenticity of the proffered evidence:

> Generally, we review trial court decisions to admit or exclude evidence for abuse of discretion. *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006). But we review *de novo* a trial court's admission of evidence over a party's hearsay objection. *State v. Hicks*, 243 N.C. App. 628, 638, 777 S.E.2d 341, 348 (2015).
> However, there is an apparent conflict in our caselaw as to our standard of review when the hearsay objection is rooted in the authentication of the proffered

evidence. Under one line of cases, we have reviewed authentication of documentary evidence under the same *de novo* standard as the trial court's admission of such evidence. *See State v. Crawley*, 217 N.C. App. 509, 515, 719 S.E.2d 632, 637 (2011) ("A trial court's determination as to whether a document has been sufficiently authenticated is reviewed *de novo* on appeal as a question of law.") (citing *State v. Owen*, 130 N.C. App. 505, 510, 503 S.E.2d 426, 430 (1998)); *State v. Watlington*, 234 N.C. App. 580, 590, 759 S.E.2d 116, 124 (2014) (citing *Crawley*). In other cases, we have reviewed similar rulings for abuse of discretion. *See In re Foreclosure by Goddard & Peterson, PLLC*, 248 N.C. App. 190, 198, 789 S.E.2d 835, 842 (2016); *State v. Mobley*, 206 N.C. App. 285, 696 S.E.2d 862 (2010) (reviewing for abuse of discretion trial court's admission of jailhouse phone call over authentication objection).

*State v. Hollis*, __ N.C. App. __, __, 905 S.E.2d 265, 267-68 (2024).

As this Court noted in *Hollis*, "[a] trial court abuses its discretion when it acts under a misapprehension of law." *Id.* at __, 905 S.E.2d at 268 (citing *Cash v. Cash*, 284 N.C. App. 1, 7, 874 S.E.2d 653, 658 (2022)). Here, as in *Hollis*, the issue before us focuses upon whether the evidence was properly authenticated as a matter of law, and "our analysis is the same whether reviewing under a *de novo* standard or for abuse of discretion." *Id.*

"Preserved legal error is reviewed under the harmless error standard of review." *State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012) (citations omitted). For rights not arising under the Constitution of the United States, "harmless error review requires the defendant to bear the burden of showing prejudice." *Id.* at 513, 723 S.E.2d at 331 (citing N.C. Gen. Stat. § 15A-1443(a)). A

defendant is prejudiced under the harmless error standard of review "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached[.]" N.C. Gen. Stat. § 15A-1443(a) (2023).

If a defendant argues and shows a right arising under the Constitution of the United States has been violated, the violation "is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C. Gen. Stat. § 15A-1443(b) (2023). The State bears the burden of proving the error was harmless beyond a reasonable doubt. *Id.*

## B. Analysis

Defendant argues the Facebook social media messages were not properly authenticated based upon an affidavit or other testimony to satisfy the business records exception and to be admitted into evidence. Defendant asserts without an affidavit sworn before a notary, the messages are insufficiently credible and should not have been admitted. Further, Defendant argues that he should have been able to cross-examine the custodian of the Facebook records under the Confrontation Clause, and these errors exceeded the level of being harmless. U.S. Const. amend. VI.

The State argues the certificate is valid and acceptable, despite not being sworn to in the presence of a notary. In the alternative, the State argues any error in the admission of the business record evidence was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b).

### *1. Business Records Exception to Hearsay*

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2023). Generally, hearsay statements are inadmissible unless they fall within an enumerated exception in the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802 (2023). One exception to the hearsay rule is the business records exception, under which certain records of regularly-conducted activity are admissible whether or not the declarant is available as a witness. N.C. Gen. Stat. § 8C-1, Rule 803(6) (2023).

A "memorandum, report, record, or data compilation" is only admissible under the business record exception to hearsay if "(i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation[.]" *Id.* The records must be "authenticated by a witness who is familiar with them and the system under which they are made." *State v. Wilson*, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985) (citations omitted).

"There is no requirement that the records be authenticated by the person who made them." *Id.* (citations omitted). The witness also does not need to be present at trial. *In re S.D.J.*, 192 N.C. App. 478, 482-83, 665 S.E.2d 818, 821-22 (2008). The requirements of Rule 803(6) may be satisfied "by the testimony of the custodian or other qualified witness, or by affidavit or by document under seal under Rule 902 of

the Rules of Evidence[.]" N.C. Gen. Stat. § 8C-1, Rule 803(6).

Instead of a witness, the evidence may be submitted by "[a]n affidavit from the custodian of the records . . . that states that the records are true and correct . . . by persons having knowledge of the information set forth, during the regular course of business at or near the time of the acts, events or conditions recorded[.]" *In re S.W.*, 175 N.C. App. 719, 725, 625 S.E.2d 594, 598 (2006); N.C. Gen. Stat. § 8C-1, Rule 803(6).

## 2. *Records without Notary Attestation*

The State laid the foundation for the Facebook messages by presenting a "Certificate of Authenticity of Domestic Records of Regularly Conducted Activity," signed by Adaline Ballard, who is identified as a custodian of records at Facebook. A specific identifier number (100012076592150) indicates these messages are regularly kept in the course of Facebook's business and were stored at the time they occurred.

The Certificate of Authentication also indicates it was made under the penalty of perjury, but the document was not notarized or otherwise contained any indication it was sworn before a public official. Defendant argues a certificate of authentication, acting as an affidavit in this case, verifying the authenticity of business records, must be signed in the presence of a notary or public official for the records to be admissible. Defendant argues the evidence was inadmissible because the Certificate of Authentication was not notarized.

An affidavit traditionally requires it be sworn to before a notary public and

subscribed. *Gyger v. Clement*, 375 N.C. 80, 83, 846 S.E.2d 496, 499 (2020) ("Our case law, however, generally expects affidavits to be notarized if they are to be admissible." (citing *Alford v. McCormac*, 90 N.C. 151, 152-53 (1884))).

Recent legislative changes have led our courts to recognize circumstances in which affidavits are valid without having been witnessed before a notary. *Hollis*, __ N.C. App. at __, 905 S.E.2d at 270-71. "Not only does Rule 803(6) contain no such explicit [affidavit] requirement, but the legislature has subsequently modified the statute to explicitly allow authentication via statements made under penalty of perjury, in accord with 28 U.S.C. § 1746. S.L. 2023-151; N.C. Gen. Stat. 8C-1, Rule 803(6) (2024)." *Id.* at __, 905 S.E.2d at 270-71.

The revised statute recognizes an oath before a notary and an explicit acknowledgment of the penalty of perjury carry the same level of legal weight. *Id.* at __ n.1, 905 S.E.2d at 268, n.1. Our General Assembly has explicitly required certain affidavits be made under oath before an official, and it has done so when necessary. *Gyger*, 375 N.C. at 85, 846 S.E.2d at 500 (2020) (citing N.C. Gen. Stat. § 52C-3-311 (2019)).

That an affidavit is valid and authenticated when it is submitted under penalty of perjury was confirmed in *State v. Hollis*, in which this Court found records from a bank were properly authenticated under the business records exception because they were "made under penalty of perjury and . . . in the course of a regularly conducted business activity, made at or near the time of the activity by a person with knowledge

of it, and that it was the regular practice of the business to make such a record[.]" *Hollis*, __ N.C. App. at __, 905 S.E.2d at 271.

Authentication serves to demonstrate "the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2023). Likewise, documents made and confirmed under penalty of perjury convey the same level of importance regarding the truth as those signed before a notary. *Gyger*, 375 N.C. at 85, 846 S.E.2d at 500 ("When a statement is given under penalty of perjury, it alerts the witness of the duty to tell the truth and the possible punishment that could result if she does not.").

The record of the Facebook messages were certified under penalty of perjury and the attestor communicated the records were made in the course of a regularly conducted business activity, made at or near the time of the activity by a person with knowledge of it, and that it was the regular practice of Facebook's business to make such a record. The certificate under penalty of perjury fulfills the purpose of authentication. *Id.*

### 3. *Confrontation Clause*

Defendant argues he had a right to confront the custodian of the Facebook messages before they were admitted into evidence.

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court of the United States in

*Crawford v. Washington* established "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004).

"The Confrontation Clause does not, however, apply to nontestimonial statements." *State v. McKiver*, 369 N.C. 652, 655, 799 S.E.2d 851, 854 (2017) (citing *Whorton v. Bockting*, 549 U.S. 406, 420, 167 L. Ed. 2d 1, 13 (2007)). Business records, in general, are nontestimonial in nature. *See Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195-96 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *State v. Melton*, 175 N.C. App. 733, 737, 625 S.E.2d 609, 612 (2006).

"[B]usiness records are neutral, are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse." *State v. Forte*, 360 N.C. 427, 435, 629 S.E.2d 137, 143 (2006).

Our Court has held the admission of a 911 event report was nontestimonial, because the report was not made for prosecutorial purposes but rather to document actions taken in an ongoing emergency as part of a regular business operation. *State v. Hewson*, 182 N.C. App. 196, 205-07, 642 S.E.2d 459, 466-67 (2007).

Likewise, the Supreme Court of the United States clarified, while certificates of analysis prepared for trial are testimonial, routine business records authenticated by custodians do not fall into this category and are admissible without triggering a

defendant's right to confrontation. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23, 174 L. Ed. 2d 314, 329 (2009). Justice Scalia, writing for the majority, expressly differentiated between an activity and affidavit created to provide evidence against a defendant and an affidavit created to authenticate an admissible record: "A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.*

Here, the trial court provided the following explanation when deciding to admit the Facebook messages pursuant to the business record exception:

> In this matter then coming on before the Court upon objection, the Court is going to overrule the objection. The Court notes, finds, and concludes that the certificate of authenticity of domestic records of regularly conducted activity is signed in Paragraph 4 in the declaration under penalty of perjury that the foregoing certification is true and correct that is signed by the custodian of records, lays out that the individual signing is the duly authorized custodian of records for Facebook and is qualified to certify Facebook's domestic records of regularly conducted activity. The Court in the exercise of discretion based on the other matters set out in the certificate of authority overrules the objection. The Court is going to grant the defendant's request to redact all but the posts that were referenced. The Court having heard this matter and with relation to the discovery issues is going to grant the defendant's request to redact all other posts except the post on pages 134 and 279 that the State had indicated they were going to place in evidence in the exercise of its discretion.

The trial court's decision comports with the general rule that business records are nontestimonial in nature. *Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195-96; *Melton*, 175 N.C. App. at 737, 625 S.E.2d at 612. "[B]usiness records are neutral" because they "are created to serve a number of purposes important to the creating organization, and are not inherently subject to manipulation or abuse." *Forte*, 360 N.C. at 435, 629 S.E.2d at 143.

As explained in *Melendez-Diaz v. Massachusetts*, an affidavit created to authenticate "an otherwise admissible record" is different from an analyst creating "a record for the sole purpose of providing evidence against a defendant." *Melendez-Diaz*, 557 U.S. at 322-23, 174 L. Ed. 2d at 329. Further, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324, 174 L. Ed. 2d at 329.

The Certificate of Authenticity provided by Adeline Ballard, Facebook's Custodian of Records, stated "[t]he records provided are an exact copy of the records that were made and kept by the automated systems of Facebook in the course of regularly conducted activity as a regular practice of Facebook." The Facebook social media messages are nontestimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id.* at 324, 174 L. Ed. 2d at 329.

The Confrontation Clause does not apply. *Id.*; *McKiver*, 369 N.C. at 655, 799 S.E.2d at 854. Defendant's constitutional right of confrontation was not violated by the admission of the messages. *Melendez-Diaz*, 557 U.S. at 322-23, 174 L. Ed. 2d at 329; *Melton*, 175 N.C. App. at 737, 625 S.E.2d at 612; *McKiver*, 369 N.C. at 655, 799 S.E.2d at 854; *Forte*, 360 N.C. at 435, 629 S.E.2d at 143; *Hewson*, 182 N.C. App. at 205-07, 642 S.E.2d at 466-67. *See also Crawford*, 541 U.S. at 56, 158 L. Ed. 2d at 195-96. This argument is without merit.

## III.  Conclusion

The trial court properly admitted and the jury properly considered the Facebook messages business records in reaching its verdict. N.C. Gen. Stat. § 8C-1, Rule 803(6). Defendant was not denied his constitutional right to confrontation. *Melendez-Diaz*, 557 U.S. at 322-23, 174 L. Ed. 2d at 329; *Melton*, 175 N.C. App. at 737, 625 S.E.2d at 612; *McKiver*, 369 N.C. at 655, 799 S.E.2d at 854; *Forte*, 360 N.C. at 435, 629 S.E.2d at 143; *Hewson*, 182 N.C. App. at 205-07, 642 S.E.2d at 466-67.

Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no error in the jury's verdict or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges GORE and FLOOD concur.

- 14 -