STATE OF NORTH CAROLINA v. WAYNE DARNELL BUMPER

No. 6915SC342

(Filed 13 August 1969)

**1. Criminal Law § 89— variance between direct and corroborative testimony — police lineup identification**

The fact that sheriff's testimony on direct examination that victim of assault had identified defendant in a lineup as the man holding card number "seven" was at variance with victim's own testimony on cross-examination that in a former trial he testified his assailant was holding card number "six" *is held* not to render the sheriff's testimony inadmissible, it being clear from all the evidence that both the sheriff and the victim knew it was defendant who had been identified in the lineup.

**2. Criminal Law § 89— variance between direct and corroborative testimony**

Slight variation in the corroborating testimony affects only the credibility of the evidence and not its admissibility.

**3. Criminal Law § 88— extent of cross-examination — impeachment**

When defendant's cross-examination of prosecuting witness for impeachment purposes clearly established the fact that the witness had stated in a former trial that he believed defendant had held card number "six" in a police identification lineup, defendant was given full benefit of cross-examination on this point, and action of trial judge in precluding further examination thereon was not error.

**4. Witnesses § 8; Criminal Law § 89— impeachment — scope of cross-examination**

The extent to which cross-examination for the purpose of impeachment

will be permitted rests largely in the discretion of the trial court, and objections to questions which amount to no more than argument with the witness are properly sustained.

**5. Criminal Law § 66— identity of defendant by photograph — admissibility**

There are no grounds for asserting that photographic identification of defendant, a Negro male, was impermissibly suggestive, where witnesses who made the identification were in hospitals in separate towns at the time of identification, and each selected the photograph of defendant from a group of twelve photographs of Negro males.

**6. Criminal Law §§ 43, 66— photograph of defendant — admissibility**

Where defendant sought to impeach testimony of witness relating to his identification of defendant by photograph, it was proper to allow the photograph in evidence to illustrate the witness' testimony that defendant's name did not appear thereon.

**7. Criminal Law §§ 43, 66— photograph of defendant — name of police department — admissibility**

The fact that jury was shown photograph of defendant in which the words "Police Department, Burlington, N. C., 9495, 7-10-66," were displayed beneath defendant's likeness is no ground for objection, since the State was entitled to introduce the photograph to illustrate its witness' challenged testimony that defendant's name did not appear thereon.

**8. Indictment and Warrant § 11— variance between pleading and proof — identity of victim**

Where the bills of indictment charged defendant with the assault and armed robbery of one Monty Jones, and the evidence is that the victim's legal name is Manson Marvin Jones, Jr., and his nickname is Monty, there is no fatal variance between pleading and proof, it being clear that the legal name and the nickname refer to one and the same person.

APPEAL by defendant from *Bowman, J.,* 20 January 1969 Session, ALAMANCE Superior Court.

The defendant, Wayne Darnell Bumper, was charged in a bill of indictment (68 Cr S 74) with a felonious assault upon Monty Jones on 31 July 1966. In another bill of indictment (68 Cr S 75) he was charged with a felonious assault upon Loretta Nelson. In another bill of indictment (68 Cr S 77) he was charged with the felony of armed robbery from Loretta Nelson and Monty Jones. The two felonious assault charges and the armed robbery charge were consolidated for trial.

The State offered evidence which tended to show that Loretta Nelson and Monty Jones had been dating for some time, and further that subsequent to the offenses alleged in the bills of indictment and prior to the time of this trial, they were married to each other and

that Loretta Nelson is now Loretta Nelson Jones. The evidence for the State further tended to show the following. Loretta Nelson and Monty Jones went for a ride in her automobile and parked on a secluded road, which led from the Mount Vernon Church Road in Alamance County, near the Burlington City Lake. This road is approximately three-quarters of a mile from where defendant lived. After they had been parked for a short time, Wayne Darnell Bumper came up to the car and tapped on the window. Loretta Nelson rolled the window down about two inches and Bumper put a rifle in the window and told her to get out. After she got out of the car, Bumper asked them for money. Bumper pointed the rifle toward her and Monty Jones gave him $3.00, and Loretta Nelson gave him about $8.00 from her pocketbook. Bumper then told Monty Jones to get in the car and lie down on the back seat, and told Loretta Nelson, "Now strip." She took her clothes off and while Bumper held the rifle aimed at the back window of the car, he caused Loretta Nelson to lie across the back of the car where he raped her. Bumper hit Loretta on the head with the rifle, causing her head to bleed, and after he had had intercourse with her and she had put her clothes back on, Bumper made the couple walk down the road. He then ordered them to go back and get in the car, and with Loretta Nelson driving, Bumper, sitting beside her and Monty Jones on the back seat, Bumper held the gun on Monty Jones to make Loretta Nelson drive where he said. They went for some distance and Bumper told Loretta to turn off on a road and stop the car. He made them get out and lie down on the ground. When Loretta and Monty asked defendant to let them go, he said, "I am going to have to kill you." After that, defendant had Loretta Nelson to tie Monty Jones to a tree by tying his hands around the tree behind him and then defendant gagged and blindfolded Monty Jones. Defendant then tied Loretta Nelson to another tree and gagged and blindfolded her. He took her clothes off and raped her again. After that, defendant walked to where Monty Jones was tied and asked him where his heart was, and shot him. Defendant then shot Loretta Nelson. After Loretta Nelson heard her car drive away, she was able to free herself and untie Monty Jones. They walked across a field until they came to a dirt road, and finally to a Mr. McPherson's house, who called the police and an ambulance for them. The ambulance took Loretta Nelson and Monty Jones to the Alamance County Hospital, but Monty Jones was immediately transferred to the North Carolina Memorial Hospital at Chapel Hill.

On 1 August 1966 Sheriff John H. Stockard, the High Sheriff of Alamance County, and Mr. J. N. Minter, a special agent of the

State Bureau of Investigation, visited Loretta Nelson at the Alamance County Hospital and visited Monty Jones at the hospital in Chapel Hill, at which time each described to the officers the events substantially as set out above. On 2 August 1966 Sheriff Stockard and Agent Minter again visited the hospitals. On the second visit they carried a group of about twelve pictures of Negro males, which they showed to Loretta Nelson to see if she could identify anyone shown in the pictures. She selected a photograph of the defendant, Wayne Darnell Bumper, as being a photograph of the person who assaulted and robbed her on 31 July 1966. The officers then went to the hospital at Chapel Hill, at which time Monty Jones selected from the group of photographs the photograph of the defendant, Wayne Darnell Bumper, as being a photograph of the person who assaulted and robbed him on 31 July 1966. Neither Loretta Nelson nor Monty Jones, before 31 July 1966, had ever seen the person who assaulted and robbed them, and did not know the name of the person whose photograph they selected on 2 August 1966.

On 16 August 1966, after Loretta Nelson and Monty Jones were allowed to leave the hospitals, Sheriff Stockard arranged a lineup of ten colored males at the Alamance County jail. Each of the subjects in the lineup was given a card, bearing a number, which he held in front of him. Present for the lineup was Sheriff Stockard, Agent Minter, the District Solicitor, Loretta Nelson, Monty Jones, and defendant's then attorney. Loretta Nelson and Monty Jones identified the defendant Wayne Darnell Bumper as being the person who assaulted and robbed them on 31 July 1966.

Defendant offered evidence which tended to show that on the night of 31 July 1966 he was in his grandmother's house, which is six or seven-tenths of a mile from the Mount Vernon Church Road. He rode his cousin's bicycle from his grandmother's house for about a quarter of a mile to his mother's house, arriving there sometime shortly before eight o'clock in the evening. He stayed at his mother's house about thirty minutes and then rode the bicycle out to the Mount Vernon Church Road. He saw and spoke to some friends who were in an automobile, and then rode his bicycle along Mount Vernon Road some distance to a store. The store was closed so he returned to his grandmother's home. He did not have a rifle, he did not see any car or cars parked on any road leading from the Mount Vernon Church Road, and did not see, assault, or rob Loretta Nelson or Monty Jones. While riding the bicycle that night he was wearing an orthopedic neck brace because of injuries received in an automobile accident on 23 July 1966.

From verdicts of guilty as charged in each of the three indict-

ments, and from judgments of imprisonment for terms of not less than twenty nor more than thirty years (for armed robbery), not less than nine nor more than ten years (for felonious assault), and not less than nine nor more than ten years (for felonious assault), the three sentences to run consecutively, defendant appealed.

*Robert Morgan, Attorney General, by Thomas B. Wood, Staff Attorney, for the State.*

*Clarence Ross for the defendant.*

BROCK, J.

The two felonious assault cases were previously tried at the 24 October 1966 Session. Also, at that time an indictment charging defendant with the rape of Loretta Nelson was consolidated for trial with the two felonious assault charges. Defendant's appeal from the 1966 conviction is reported in *State v. Bumpers,* 270 N.C. 521, 155 S.E. 2d 173, in which the convictions were affirmed. However, on *certiorari,* the Supreme Court of the United States (*Bumper v. North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788) reversed the convictions upon the ground that the rifle allegedly used in the felonious assaults and rape was introduced in evidence after an unlawful search and seizure thereof. The rape charge has not been retried.

[1] Defendant assigns as error that the trial judge permitted the sheriff to testify that Monty Jones identified the man holding card No. 7 as his assailant. As noted in the statement of facts, when Sheriff Stockard arranged the lineup on 16 August 1966, each subject in the lineup was given a card. Defendant Wayne Darnell Bumper was given a card with the number "7" on it for the first viewing by the witnesses, and he held a card with the number "2" on it for the second viewing. On cross-examination Monty Jones testified that at the 1966 trial he had stated that he believed defendant was holding a card with number "6" on it. He testified that he was confused at trial about what number defendant was holding at the lineup. The witness had viewed the lineup twice with defendant holding a different number on the second viewing. However, the witness testified that after each viewing he went in and told the sheriff the number being held by the man he said attacked him. The sheriff said that after each viewing Monty Jones reported to him the number which was held by Wayne Darnell Bumper. Concerning the first viewing of the lineup, Sheriff Stockard testified that Monty Jones "came back and reported to me that it was No. 7, I believe." De-

fendant contends that it was error to allow the sheriff to so testify because his testimony did not corroborate Monty Jones' testimony at the first trial where Jones had stated that he believed he had told the sheriff No. 6.

[1, 2] It is clear that both Monty Jones and the sheriff did not recall positively which number Jones had told the sheriff that Wayne Darnell Bumper was holding, but this does not render the testimony inadmissible; slight variation in the corroborating testimony affects only the credibility of the evidence. *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354. Also, it is equally clear that both Jones and the sheriff knew it was Wayne Darnell Bumper who had been identified by Jones in both viewings of the lineup. The basic fact to be established was whether the witness properly identified defendant, not whether the witness remembers in January 1969 a number carried by defendant in the first of two lineups in August 1966. A failure to remember positively the number might make good argument to the jury, but it does not affect the admissibility of the testimony. This assignment of error is overruled.

[3] Defendant next assigns as error that the trial judge unduly restricted his cross-examination of the State's witness Monty Jones. On cross-examination of Monty Jones counsel for defendant went into the question of Jones's having stated during the 1966 trial that Wayne Darnell Bumper was holding card No. 6 in the first lineup. The witness admitted several times that at the 1966 trial he had stated he believed he told the sheriff that defendant was holding card No. 6. And when defense counsel made the same inquiry again, upon objection by the State, the trial judge told defense counsel: "Let's don't pursue that particular line of question any further about the number 6."

[4] Defendant had the full benefit of cross-examining the witness on this point; he had clearly established that the witness had stated in the 1966 trial that he believed defendant held the No. 6 card. ". . . [T]he extent to which cross-examination for the purpose of impeachment will be permitted rests largely in the discretion of the trial court. Objections to questions which amount to no more than argument with the witness are properly sustained." 7 Strong, N.C. Index 2d, Witnesses, § 8, p. 703. This assignment of error is overruled.

Defendant next assigns as error that the trial judge allowed the State to introduce into evidence, over defendant's objection, the photograph of defendant which Loretta Nelson and Monty Jones had selected as being a photograph of the person who assaulted and

robbed them. This photograph had been marked State's exhibit 3A, and on this trial had been identified by Loretta Nelson, Monty Jones, Sheriff Stockard, and Mr. Minter as the photograph selected by the two victims as being a photograph of the person who assaulted them. There is some serious question as to whether defendant specifically objected to this photograph being offered in evidence, but we treat the matter as though objection was properly made.

**[5]**    There is no showing or contention that the photographic identification was suggestive in any way to the witnesses to cause them to identify defendant. The witnesses were in separate hospitals in separate towns, and each selected the photograph of defendant from a group of about twelve photographs. In *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, it was said: ". . . [w]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

**[6]**    Defendant argues, nevertheless, that it was error to allow the photograph in evidence because defendant had offered no contradictory evidence at the time of its admission. However, defendant carefully cross-examined the witnesses concerning whether defendant's name appeared on the photograph at the time it was exhibited to the witnesses. Obviously the State offered the photograph thereafter to illustrate the testimony of the witness as to what the photograph did and did not show. After defendant's searching cross-examination in an attempt to impeach and discredit the identification process, it was proper to allow the photograph to illustrate the witnesses' testimony that defendant's name did not appear in the photograph.

**[7]**    Defendant argues that the photograph as admitted in evidence and displayed to the jury did show, under defendant's likeness a sign which reads, "Police Department, Burlington, N. C., 9495, 7-10-66." And he argues that to allow this to be displayed to the jury was prejudicial to defendant because it indicated to the jury defendant had previously been in custody of the police, and it thereby improperly placed his character in evidence. While counsel for defendant was cross-examining the State's witnesses concerning defendant's name appearing on the photograph, the photograph was available for an inspection from which he should have known that defendant's name in fact did not appear on the face thereof. Having

injected this effort to impeach and discredit the identification made by the witnesses, defendant can hardly complain that when the State properly offered the photographs to illustrate its witnesses' testimony, the photograph incidentally showed the words of which defendant now complains.

[8]   Defendant next assigns as error that the trial judge overruled defendant's motion for nonsuit upon the charge of assault on Monty Jones, and the charge of armed robbery of Monty Jones and Loretta Nelson. Defendant contends there is a fatal variance between the indictments and the proof with respect to the name of the victim. In each of the bills of indictment the name of Monty Jones appears. On direct examination the witness testified: "My name is Manson Marvin Jones, Jr., . . ." On cross-examination he testified: "My legal name is Manson Marvin Jones, Jr. That is the name on my birth certificate." "The name Monty Jones is not my legal name." "It is my nickname. I never changed my name to Monty." On direct examination Loretta Nelson testified: "I am married to Manson Marvin Jones. My husband's nickname is Monty."

It was clear throughout the testimony that Manson Marvin Jones was generally referred to by his nickname "Monty." There was no uncertainty as to the identity of the prosecuting witness. As was said in *Bennett v. United States*, 227 U.S. 333, 57 L. Ed. 531, 33 S. Ct. 288, "Defendant was indicted for having caused the transportation of Opal Clarke; and, it is said, the testimony showed that her correct name was Jeanette, but that she had gone by the names of Opal and Nellie, her real name, however, being Jeanette Laplante. A variance is hence asserted between the allegation and the proof. The court of appeals rightly disposed of the contention. As the court said, the essential thing is the requirement of correspondence between the allegation of the name of the woman transported and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another prosecution for the same offense." The record in this case is sufficient for both purposes, and defendant cannot be prejudiced by one of the victims having a nickname which was used in the bill of indictment. The record of defendant's trial clearly shows that Monty Jones and Manson Marvin Jones, Jr., are one and the same person; thus he is protected against a second prosecution for the same offense.

Defendant next assigns as error that the trial judge erred in his charge to the jury in failing to require a finding of felonious intent in the armed robbery charge.

Defendant has lifted out of context that portion of the charge in which the trial judge read pertinent portions of G.S. 14-87 and was explaining that in order to find defendant guilty as charged it was necessary to find that the robbery was committed with the use or threatened use of firearms. The judge immediately thereafter fully explained the elements of common law robbery to which the element of use of firearms must be added to convict defendant as charged. Although capable of being explained in other ways, the elements of the offense were fully and amply explained to the jury. The case was submitted to the jury under a clear and appropriate explanation of the applicable principles of law. In the trial we find no prejudicial error.

No error.

CAMPBELL and MORRIS, JJ., concur.