GEER, Judge.
 

 *144
 
 Defendant Issac J. Pender, Jr. appeals from judgments sentencing him based on convictions of violating a domestic violence protection order ("DVPO"), possession of a firearm by a felon, first degree burglary, multiple counts of second degree kidnapping, and multiple counts of assault by pointing a gun. We find defendant's arguments on appeal unpersuasive with one exception. We agree with defendant that the judgments based on his convictions of second degree kidnapping of his own sons must be vacated. The plain language of N.C. Gen.Stat. § 14-39 (2013) does not permit prosecution of a parent for kidnapping, at least when that parent has custodial rights with respect to the children. We find no error as to the remaining judgments.
 

 Facts
 

 The State's evidence tended to show the following facts. Defendant and his wife Nancy Alston were married in 2007 or 2008 and had two children together, J.P. and E.P.
 
 [1]
 
 Nancy has two older children from a different relationship, D.M. and A.M. After they were married, Nancy and defendant lived with all four children at their house in Franklinton, North Carolina. However, at some point, Nancy "put [defendant] out" of the house. On or about 10 March 2011, defendant broke into Nancy's house, assaulted and threatened her and then fled. Nancy filed for a DVPO against defendant. Defendant was arrested, and on 29 August 2011, he was convicted of felony assault by strangulation and imprisoned for eight months. Nancy continued to live at the house in Franklinton.
 

 Following defendant's release from prison, he went to Nancy's house, cut her phone line, broke in, and sexually assaulted her. After this incident, Nancy and her children moved in with Vera Pierson, Nancy's mother, at Vera's house in Louisburg, North Carolina.
 

 *145
 
 On 6 July 2012, defendant obtained a shotgun, called J.P. and told him that he loved him and that he was going to kill Nancy. After the call, defendant, who had been drinking vodka, left with the shotgun in the trunk of his car.
 

 That evening at Vera's house, while Nancy was giving J.P. a bath, J.P. disclosed that defendant had said he was going to kill Nancy. Later, after Nancy's children were in bed, Nancy was at her aunt's neighboring
 
 *356
 
 house playing cards when some family members who were staying at Vera's house told Nancy that she needed to come back to Vera's because defendant was on his way over. Nancy returned to Vera's house.
 

 Later that evening, defendant arrived clandestinely at Vera's house. While Nancy's sister Octavia Tewanda Alston ("Tewanda") was using the phone, defendant cut the phone line and the phone went dead. Moments later, after investigating outside, Tewanda ran into the house and yelled to Nancy that defendant was there. Nancy ran into a bedroom where Vera was watching television, and she begged Vera to hide her. Vera hid Nancy in a small closet in that room, and Vera sat in a chair in front of the closet and continued to watch television. Inside Vera's house, along with Vera, Nancy, and Nancy's children, were Tewanda and Tewanda's children M.A., D.A., and K.A.; Nancy's other sister Takita Alston and Takita's daughter S.A.; and Nancy's brother Nathaniel. At this time, S.A., D.A., E.P., J.P., and K.A. were all under 16 years of age. In total, there were 13 people in Vera's house when defendant broke into the house.
 

 While still outside the house, defendant shot Nancy's truck, which Nancy and the others inside the house heard, and defendant broke in by shooting through a side window of the house. After defendant was in the house, he yelled, "Where's that bitch at? ... I'm going to kill her." Waving his shotgun, and without knowing whether Nancy was there, defendant ordered every occupant in the house into the bedroom where Vera was watching television and said that he was going to stay until he got "the last breath out of [Nancy]." Nancy's children and nieces and nephews were crying, and Vera complained of her chest hurting. Defendant pointed his shotgun back and forth at every person in the bedroom and repeatedly asked where Nancy was. Vera told him that Nancy had gone out for the evening, and others similarly answered that she was not there.
 

 Defendant searched the house, but he did not find Nancy. Defendant then called out his sons, J.P. and E.P., to give him a hug. About 30 to 45 minutes after defendant's break-in, defendant left. Because defendant had cut the phone line to Vera's house, D.A. ran next door to Nancy's
 
 *146
 
 aunt's house and used the phone there to call 911. When the police arrived, it was morning, and an officer had to pull Nancy out of the closet because she was petrified from fear.
 

 Defendant was indicted for 12 counts of first degree kidnapping and 12 counts of assault by pointing a gun. Defendant was not charged with kidnapping or assaulting Nancy. Defendant was also indicted for violating a DVPO, possession of a firearm by a felon, and first degree burglary.
 

 At trial, the State's evidence included testimony from witnesses including Nancy, Vera, Tewanda, D.A., and D.M. At the close of the State's evidence, defense counsel made a motion to dismiss which the trial court granted in part by dismissing the first degree kidnapping charges. However, the trial court permitted the State to proceed against defendant on 12 counts of second degree kidnapping. Defendant presented no evidence.
 

 The jury convicted defendant of 12 counts of second degree kidnapping, 12 counts of assault by pointing a gun, violation of a DVPO, possession of a firearm by a felon, and first degree burglary. Defendant filed a pro se notice of appeal on 3 December 2013 from the judgments entered on his convictions. Defendant admits that this notice was untimely, technically defective, and not served upon the State. However, defendant also filed a petition for writ of certiorari on 9 September 2014. The State has not responded to defendant's petition. The State filed its appellee brief on 10 November 2014, after defendant's petition was filed, but made no reference to the defects of defendant's notice of appeal. In our discretion, we grant defendant's petition for writ of certiorari.
 
 See
 

 State v. Rowe,
 
 --- N.C.App. ----, ----,
 
 752 S.E.2d 223
 
 , 225 (2013) (granting defendant's petition for writ of certiorari when pro se notice of appeal not served on State and it contained "a number of other deficiencies").
 

 I
 

 Defendant first argues that there were fatal deficiencies in certain of the kidnapping indictments that deprived the trial
 
 *357
 
 court of jurisdiction over those charges. "This Court reviews the sufficiency of an indictment
 
 de novo.
 
 'Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.' "
 
 State v. Justice,
 

 219 N.C.App. 642
 
 , 643,
 
 723 S.E.2d 798
 
 , 800 (2012) (internal citation omitted) (quoting
 
 State v. Biber,
 

 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011) ). Although the State points out that defendant raises these arguments for the first time on appeal, a criminal defendant may challenge the jurisdiction of the trial court at any time by arguing the insufficiency of an indictment, "notwithstanding [the] defendant's
 
 *147
 
 failure to contest [the indictment's] validity in the trial court."
 
 State v. Call,
 

 353 N.C. 400
 
 , 429,
 
 545 S.E.2d 190
 
 , 208 (2001).
 

 " '[A]n indictment is not facially invalid as long as it notifies an accused of the charges against him sufficiently to allow him to prepare an adequate defense and to protect him from double jeopardy.' "
 
 State v. McKoy,
 

 196 N.C.App. 650
 
 , 656,
 
 675 S.E.2d 406
 
 , 411 (2009) (quoting
 
 State v. Haddock,
 

 191 N.C.App. 474
 
 , 476-77,
 
 664 S.E.2d 339
 
 , 342 (2008) ). However, an indictment is fatally deficient when it fails on its face to allege "all of the essential elements of the offense."
 
 State v. Snyder,
 

 343 N.C. 61
 
 , 65,
 
 468 S.E.2d 221
 
 , 224 (1996).
 

 A person is guilty of kidnapping when the State proves that he
 

 unlawfully confine[ed], restrain[ed], or remove[ed] from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, ... if such confinement, restraint or removal is for the purpose of:
 

 (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
 

 (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
 

 (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or
 

 (4) Holding such other person in involuntary servitude in violation of G.S. 14-43.12.
 

 (5) Trafficking another person with the intent that the other person be held in involuntary servitude or sexual servitude in violation of G.S. 14-43.11.
 

 (6) Subjecting or maintaining such other person for sexual servitude in violation of G.S. 14-43.13.
 

 N.C. Gen.Stat. § 14-39(a).
 

 Defendant challenges the indictments for the kidnapping victims who were under 16 years old. Each indictment naming as victims S.A., D.A., E.P., J.P., A.M., and K.A., stated that defendant "unlawfully, willfully, and feloniously did kidnap [the victim], a person under the age of
 
 *148
 
 16 years by unlawfully confining the victim and restraining the victim
 
 without the victim's consent
 
 ...." (Emphasis added.) Defendant contends that because the kidnapping indictments for those victims did not allege a lack of parental or custodial consent, those indictments were fatally defective.
 

 Our Supreme Court has explained, however, that "the victim's age is not an essential element of the crime of kidnapping itself, but it is, instead, a factor which relates to the state's
 
 burden of proof
 
 in regard to consent. If the victim is shown to be under sixteen, the state has the burden of showing that he or she was unlawfully confined, restrained, or removed from one place to another without the consent of a parent or legal guardian. Otherwise, the state must prove that the action was taken without his or her own consent."
 
 State v. Hunter,
 

 299 N.C. 29
 
 , 40,
 
 261 S.E.2d 189
 
 , 196 (1980) (emphasis added).
 

 Because age is not an essential element of the crime of kidnapping, and whether the State must prove a lack of consent from the victim or from the parent or custodian is contingent upon the victim's age, we hold that the indictments at issue are adequate
 
 *358
 
 even though they allege that the victim-and not the parent-did not consent.
 
 See also
 

 State v. Sturdivant,
 

 304 N.C. 293
 
 , 310,
 
 283 S.E.2d 719
 
 , 731 (1981) (holding kidnapping indictment sufficient when it alleged that defendant kidnapped victim " '
 
 by unlawfully restraining her,
 
 ' " even though indictment did not specifically allege lack of consent for victim older than 16, because "common sense dictates that one cannot unlawfully kidnap ... another with his consent"). We conclude, therefore, that defendant's kidnapping indictments were sufficient for the victims who were allegedly under 16 at the time of the incident.
 

 II
 

 Defendant also argues that there were fatal variances between the indictments naming D.M. and Vera as victims and the evidence presented at trial. Defendant acknowledges that his argument is not properly preserved because he did not argue the existence of a fatal variance at trial.
 
 See
 

 State v. Mason,
 

 222 N.C.App. 223
 
 , 226,
 
 730 S.E.2d 795
 
 , 798 (2012) (holding defendant failed to preserve fatal variance argument when "[f]atal variance was not a basis of his motions to dismiss"). However, defendant asks that we invoke Rule 2 of the Appellate Rules to suspend or vary the preservation requirements "to prevent injustice." Alternatively, defendant argues that his trial counsel provided ineffective assistance of counsel ("IAC") when he failed to make the fatal variance argument at trial.
 

 *149
 
 Rule 2 provides that an appellate court may address an unpreserved argument "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest[.]" However, the authority to invoke Rule 2 is "discretionary,"
 
 State v. Everette,
 
 --- N.C.App. ----, ----,
 
 764 S.E.2d 634
 
 , 639 (2014), and this discretion should only be exercised in "exceptional circumstances ... in which a fundamental purpose of the appellate rules is at stake."
 
 State v. Hart,
 

 361 N.C. 309
 
 , 315-16,
 
 644 S.E.2d 201
 
 , 205 (2007) (internal quotation marks omitted). Because this case does not involve exceptional circumstances, we, in our discretion, decline to invoke Rule 2.
 

 To prevail on a claim for IAC, a defendant must satisfy a two-part test:
 

 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 

 State v. Banks,
 

 367 N.C. 652
 
 , 655,
 
 766 S.E.2d 334
 
 , 337 (2014) (quoting
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984) ).
 

 Even assuming, without deciding, that defendant's trial counsel's performance was deficient, defendant cannot show the requisite prejudice since, even if the alleged variances were made the basis for his motion to dismiss, the motion should have in any event been denied.
 

 A variance occurs where the allegations in an indictment, although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial. [The issue of a fatal variance is] based upon the same concerns [as the issue of a sufficient indictment]: to insure that the defendant is able to prepare his defense against the crime with which he is charged, and to protect the defendant from another prosecution for the same incident.
 

 In order for a variance to warrant reversal, the variance must be material. A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged.
 

 *150
 

 State v. Norman,
 

 149 N.C.App. 588
 
 , 594,
 
 562 S.E.2d 453
 
 , 457 (2002) (internal citation omitted).
 

 Defendant first contends that the indictment naming D.M. had a fatal variance because, while the indictment alleged that D.M. was at least 16 years old at the time of the incident, the evidence conclusively established that D.M. was 16 at the time. However, because D.M.'s age does not involve an
 
 *359
 
 essential element of the crime of kidnapping, any alleged variance in this regard could not have been fatal.
 
 See
 

 State v. Tollison,
 

 190 N.C.App. 552
 
 , 557,
 
 660 S.E.2d 647
 
 , 651 (2008) (holding variance between indictment alleging victim attained age of 16 and evidence presented at trial that victim was younger than 16 not fatal).
 

 Defendant also contends that a fatal variance occurred with respect to the indictment naming "Vera Alston" as a victim, because the undisputed evidence showed that Vera's last name was "Pierson." In
 
 State v. Bowen,
 

 139 N.C.App. 18
 
 , 27,
 
 533 S.E.2d 248
 
 , 254 (2000) (quoting
 
 State v. Abraham,
 

 338 N.C. 315
 
 , 340,
 
 451 S.E.2d 131
 
 , 144 (1994) ), this Court explained that "our case law precedent is clear, that '[w]here an indictment charges the defendant with a crime against someone other than the actual victim, such a variance is fatal.' " Nonetheless, our Courts have not found fatal variances where a discrepancy in the victim's name was inadvertent and the individual referred to in the indictment was the same person alleged to be the victim at trial.
 

 In
 
 State v. Bumper,
 

 5 N.C.App. 528
 
 , 535,
 
 169 S.E.2d 65
 
 , 69 (1969), this Court addressed whether an indictment fatally varied from evidence at trial, where the evidence established that the victim was referred to in the indictment by his nickname, Monty Jones, rather than by his real name, Manson Marvin Jones, Jr. In concluding that there was no fatal variance,
 
 Bumper
 
 relied on the United States Supreme Court's decision,
 
 Bennett v. United States,
 

 227 U.S. 333
 
 ,
 
 33 S.Ct. 288
 
 ,
 
 57 L.Ed. 531
 
 (1913), in which the " '[d]efendant was indicted for having caused the transportation of Opal Clarke; and ... the testimony showed that her correct name was Jeanette, but that she had gone by the names of Opal and Nellie, her real name, however, being Jeanette Laplante.' "
 
 5 N.C.App. at 535
 
 ,
 
 169 S.E.2d at 70
 
 (quoting
 
 Bennett,
 

 227 U.S. at 338
 
 ,
 
 33 S.Ct. at 288
 
 ,
 
 57 L.Ed. at
 
 533 ).
 

 Bumper
 
 noted the Supreme Court's reasoning that the variance in
 
 Bennett
 
 was not fatal because " 'the essential thing in the requirement of correspondence between the allegation of the name of the woman transported and the proof is that the record be in such shape as to inform the defendant of the charge against her and to protect her against another
 
 *151
 
 prosecution for the same offense.' "
 

 Id.
 

 (quoting
 
 Bennett,
 

 227 U.S. at 338
 
 ,
 
 33 S.Ct. at 289
 
 ,
 
 57 L.Ed. at
 
 533-34 ). Since in
 
 Bumper
 
 "[t]he record of defendant's trial clearly show[ed] that Monty Jones and Manson Marvin Jones, Jr., are one and the same person[,]" this Court found, as was the case in
 
 Bennett,
 
 that "[t]here was no uncertainty as to the identity of the prosecuting witness" and, therefore, the
 
 Bumper
 
 defendant was "protected against a second prosecution for the same offense."
 

 Id.,
 

 169 S.E.2d at 69, 70
 
 .
 

 Here, the evidence is undisputed that one of defendant's victims for kidnapping and assault on the date alleged in the indictment naming "Vera Alston" as the victim was defendant's mother-in-law, Vera Pierson. Given this, there was no uncertainty that the identity of the alleged victim "Vera Alston" was actually "Vera Pierson." Further, "[a]t no time in the proceeding [below] did Defendant indicate any confusion or surprise as to whom Defendant was charged" with having kidnapped and assaulted.
 
 State v. Hewson,
 

 182 N.C.App. 196
 
 , 212,
 
 642 S.E.2d 459
 
 , 470 (2007). We, therefore, hold that there was no fatal variance.
 
 See
 

 id.
 
 at 211,
 
 642 S.E.2d at 469-70
 
 (explaining "changes to the surname of a victim" in indictment do not substantially alter murder charges against defendant, especially where defendant did not indicate confusion or surprise regarding identity of alleged murder victim).
 
 See also
 

 State v. Chavis,
 

 207 N.C.App. 264
 
 ,
 
 699 S.E.2d 478
 
 ,
 
 2010 WL 3633610
 
 , at *2, 2010 N.C.App. LEXIS 1853, at *6 (2010) (unpublished) ("The names 'Margarita Isabel Garcia' [name proven at trial] and 'Margarita Isabella Garcia Bahena' [alleged name] are sufficiently similar to identify the victim of the crime. No fatal variance exists between the allegation of the victim's name in the indictment and the identity of the victim as proven at trial.").
 

 III
 

 Defendant additionally argues that the State presented insufficient evidence with respect to several of his convictions.
 

 *360
 
 " 'This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 ' "
 
 State v. Marley,
 

 227 N.C.App. 613
 
 , 613,
 
 742 S.E.2d 634
 
 , 635 (2013) (quoting
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) ). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ). "Substantial evidence is such relevant evidence as a reasonable mind
 
 *152
 
 might accept as adequate to support a conclusion."
 
 State v. Smith,
 

 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980).
 

 The State, however, argues that these issues were not preserved for appellate review. Rule 10(a)(3) of the Appellate Rules provides,
 

 In a criminal case, a defendant may not make insufficiency of the evidence to prove the crime charged the basis of an issue presented on appeal unless a motion to dismiss the action, or for judgment as in case of nonsuit, is made at trial. If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, defendant's motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.
 

 At the close of the State's evidence, defense counsel moved "the Court to dismiss these actions because the State ha[d] not met their burden." Defense counsel then referred to the charges of kidnapping, assault, possession of a firearm by a felon, and first degree burglary as those for which he believed the State did not produce enough evidence. The trial court asked defense counsel if he "ha[d] any specific element of any individual crime that [he] would like to make an argument about[,]" after which defense counsel brought up the issue that, for first degree kidnapping, there was insufficient evidence that the victims were not released in a safe place. After hearing that argument, the trial court asked defense counsel if he "ha[d] any other specific elements of any specific crimes that [he] would like to be heard on[,]" after which defense counsel argued there was insufficient evidence on the burglary charge that the breaking and entering happened at night. After allowing the State to proceed on second degree kidnapping charges instead, the trial court denied dismissal of the burglary charge. Then, after the trial court determined that defendant would not testify or present any evidence, defense counsel "renewed [his] motions[,]" to which the trial court responded, "my rulings are the same."
 

 The State contends that because defendant's trial counsel specifically argued that the State presented insufficient evidence regarding only two elements of all of the crimes defendant was charged with, defendant's motion to dismiss encompassed only those arguments with respect to which he specifically made. However, because defendant's initial motion to dismiss was based on insufficient evidence and defendant
 
 *153
 
 referenced each of the crimes with which he was charged, and, even after the trial court dismissed the first degree kidnapping charges he "renewed [his] motions[,]" defendant's motion to dismiss encompassed all of the charges at issue and, therefore, preserved his insufficient evidence arguments with respect to all of his convictions.
 
 See
 

 State v. Mueller,
 

 184 N.C.App. 553
 
 , 559,
 
 647 S.E.2d 440
 
 , 446 (2007) (holding defendant's general motion to dismiss based on insufficient evidence, which was renewed after defendant presented evidence, was sufficient to preserve insufficient evidence arguments as to all 36 of defendant's charges, even though after making his initial motion, defendant only made specific arguments to trial court as to five charges). Consequently, we address the merits of defendant's arguments.
 

 Defendant first argues that there was insufficient evidence for his convictions of assault by pointing a gun. N.C. Gen.Stat. § 14-34 (2013) provides that a defendant is guilty of assault by pointing a gun "[i]f [he] point[s] any gun or pistol at any person, either in fun or otherwise, whether such gun
 
 *361
 
 or pistol be loaded or not loaded...." Defendant contends that the State's evidence was too vague for the jury to infer that he pointed a gun at any particular individual.
 

 However, at trial, D.A. testified that upon defendant's orders, "
 
 everybody
 
 ran in the room with us ... and he was waiving [sic] the gun
 
 at us
 
 [.]" (Emphasis added.) Vera testified that "[w]hen [defendant] came down the hall, when he told
 
 everyone
 
 to get into one room,
 
 all of them
 
 came in there ... [e]ven the two little ones...." (Emphasis added.) Tewanda testified that once everybody was in the same bedroom, defendant pointed the shotgun outward from his shoulder. Vera also testified, "I was nervous for the kids was down there hollering and carrying on, and he hollered-he point [sic] the gun toward everybody in one room. One room. And told them come on in here with me." Based on this evidence, the jury could reasonably have inferred that each individual besides Nancy who was in the house that evening was corralled by defendant into a single bedroom and that defendant pointed his shotgun at each of these people. We hold that each conviction for assault by pointing a gun was supported by the evidence.
 

 Defendant also argues that his kidnapping charges should have been dismissed because there was insufficient evidence that his purpose in confining the victims was to terrorize them. A defendant intends to terrorize another when the defendant intends to place that person " 'in some high degree of fear, a state of intense fright or apprehension.' "
 
 State v. Davis,
 

 340 N.C. 1
 
 , 24,
 
 455 S.E.2d 627
 
 , 639 (1995) (quoting
 
 State v. Moore,
 

 315 N.C. 738
 
 , 745,
 
 340 S.E.2d 401
 
 , 405 (1986) ). " 'A defendant's
 
 *154
 
 intent is rarely susceptible to proof by direct evidence; rather, it is shown by his actions and the circumstances surrounding his actions.' "
 
 State v. Boozer,
 

 210 N.C.App. 371
 
 , 375,
 
 707 S.E.2d 756
 
 , 761 (2011) (quoting
 
 State v. Rodriguez,
 

 192 N.C.App. 178
 
 , 187,
 
 664 S.E.2d 654
 
 , 660 (2008) ). Evidence of "the victim's subjective feelings of fear, while not determinative of the defendant's intent to terrorize, are relevant."
 
 State v. Baldwin,
 

 141 N.C.App. 596
 
 , 604,
 
 540 S.E.2d 815
 
 , 821 (2000).
 

 Defendant contends that "[t]he State proceeded under the misapprehension that [defendant] would be guilty of kidnapping if the victims
 
 were terrorized
 
 rather than if he
 
 intended to terrorize
 
 them." Defendant concedes on appeal that the State offered substantial evidence that the victims were frightened and that he intended to terrorize Nancy.
 

 This evidence, however, was sufficient when combined with the following evidence from which a jury could infer defendant's purpose was to terrorize each of the other alleged kidnapping victims, as well: That defendant shot Nancy's truck parked outside the house so that everyone could hear it, cut the telephone line to the house at night, shot through the windows multiple times to break into the house, yelled multiple times upon entering the house that he was going to kill Nancy, corralled the occupants of the house into a single bedroom, demanded of those in the bedroom to know where Nancy was, exclaimed that he was going to kill Nancy, and pointed his shotgun at them.
 
 See
 

 Williams v. State,
 

 271 Ga.App. 755
 
 , 756,
 
 610 S.E.2d 704
 
 , 705 (2005) ("The evidence shows that [defendant] told a seven-year-old child that she was going to kill her mother. We can conceive of no purpose for saying such thing other than to terrorize the child.");
 
 State v. Van Vleck,
 

 805 S.W.2d 297
 
 , 299 (Mo.App.1991) ("The appellant's repeated threats to kill Johnson's child coupled with his demand that Johnson get into her car inferred [sic] that he intended, at the least, to unlawfully confine them with the purpose to terrorize Johnson by threatening violence to her small child.").
 

 IV
 

 Finally, defendant challenges his convictions of kidnapping his sons, J.P. and E.P. Defendant argues that "[e]ither parent has the right to consent to their child's removal or confinement" and, therefore, "[a] parent cannot kidnap [his] own child." We agree that the trial court should have dismissed these two kidnapping counts. N.C. Gen.Stat. § 14-39(a) provides that a person is criminally liable for kidnapping if he "unlawfully
 
 *362
 
 confine [s] ... any other person under the age of 16 years
 
 without the consent of a parent or legal custodian of such person
 
 [.]" (Emphasis added). Accordingly, there is no kidnapping when a parent or
 
 *155
 
 legal custodian consents to the unlawful confinement of his minor child, regardless whether the child himself consents to the confinement. The plain language requires that only one parent-"a parent"-consent to the confinement.
 

 There is no dispute that if someone other than defendant had, with defendant's consent, confined defendant's sons, then there would be no kidnapping under N.C. Gen.Stat. § 14-39.
 
 [2]
 
 The State has provided no basis for construing N.C. Gen.Stat. § 14-39 to preclude a kidnapping charge against a third person when defendant consented to confinement of his sons, but to allow the State to prosecute defendant for confining his sons.
 

 Our Supreme Court has held that "the victim's age is not an essential element of the crime of kidnapping itself, but it is, instead, a factor which relates to the state's burden of proof in regard to [the element of] consent."
 
 Hunter,
 

 299 N.C. at 40
 
 ,
 
 261 S.E.2d at 196
 
 . Continuing, the Court concluded that "[i]f the victim is shown to be under sixteen, the state has the burden of showing that [the victim] was unlawfully confined, restrained, or removed from one place to another without the consent of a parent or legal guardian."
 

 Id.
 

 In this case, it was shown that defendant's children were under 16 years of age. Therefore, under
 
 Hunter,
 
 the State had the burden to show that the confinement of defendant's children was without his consent, a burden that it obviously could not meet since it was defendant who was doing the confining.
 
 Cf.
 

 State v. Walker,
 

 35 N.C.App. 182
 
 , 184,
 
 241 S.E.2d 89
 
 , 91 (1978) ("It is clear, then, that at least in the absence of a custody order in favor of the mother, the father of the child taken cannot be guilty of the crime of child abduction.").
 

 While the facts of this case suggest that the General Assembly may wish to consider amending the kidnapping statute to permit a parent to be charged with kidnapping under certain circumstances, given the current plain language of N.C. Gen.Stat. § 14-39, we must assume that the General Assembly has chosen to punish this type of conduct by a parent under other statutes.
 
 [3]
 
 It may be that the General Assembly chose not to
 
 *156
 
 include confinements with parental consent within the definition of kidnapping in recognition of the authority parents have over their children. As our Supreme Court observed in the seminal kidnapping case in North Carolina, "[i]t is ... for the Legislature, not this Court, to determine the advisability of [any] change in the law as now declared in G.S. 14-39."
 
 State v. Fulcher,
 

 294 N.C. 503
 
 , 527,
 
 243 S.E.2d 338
 
 , 354 (1978). Therefore, unless and until the General Assembly amends N.C. Gen.Stat. § 14-39, it is our duty to apply the statute's plain words and require the State to prove the requisite lack of parental consent when the victim is shown to be under 16 years of age. We, therefore, hold that the State failed to prove that defendant kidnapped J.P. and E.P. We vacate the judgments based on those convictions and remand for resentencing.
 

 NO ERROR IN PART; VACATED AND REMANDED IN PART.
 

 Judges STEPHENS and DILLON concur.
 

 [1]
 

 Initials are used in this opinion to protect the juveniles' privacy.
 

 [2]
 

 There is nothing in the record to indicate that any order had been entered stripping defendant of his custodial rights. We do not address the question whether a parent
 
 without
 
 custodial rights may be held criminally liable for kidnapping.
 

 [3]
 

 For example, misdemeanor child abuse, N.C. Gen.Stat. § 14-318.2(a) (2013), would apply if defendant "inflict[ed] physical injury" or "created a substantial risk of physical injury." Defendant's conduct could also fall within N.C. Gen.Stat. § 14-33(d) (2013), providing that "[a]ny person who, in the course of an assault, assault and battery, or affray, ... uses a deadly weapon, in violation of subdivision (c)(1) of this section, on a person with whom the person has a personal relationship, and in the presence of a minor, is guilty of a Class A1 misdemeanor."