IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-675

 Filed: 19 April 2016

Orange County, Nos. 13 CRS 52988–92

STATE OF NORTH CAROLINA

 v.

CALEB HOPKIRK-RIDLEN HILL, Defendant.

 Appeal by defendant from judgments entered 3 December 2014 by Judge

Edwin G. Wilson, Jr. in Orange County Superior Court. Heard in the Court of

Appeals 3 December 2015.

 Attorney General Roy Cooper, by Assistant Attorney General Derek L. Hunter,
 for the State.

 James W. Carter, for defendant-appellant.

 DIETZ, Judge.

 Defendant Caleb Hill appeals his convictions on multiple counts of breaking

and entering, larceny, and injury to real property based on a series of break-ins at

businesses in a shopping center in Chapel Hill.

 Hill first argues that the trial court erred by failing to exclude the testimony

of two law enforcement officers who identified him in surveillance video from the

shopping center. As explained below, the officers were familiar with Hill and

recognized distinct features of Hill’s face, posture, and gait that would not have been
 STATE V. HILL

 Opinion of the Court

evident to the jurors. Hill’s appearance also had changed from the time of the crimes

to the time of trial, and the officers’ testimony assisted the jury in understanding

Hill’s appearance at the time of the crime and its similarity to the person in the

surveillance videos. Accordingly, the trial court did not abuse its discretion in

permitting this testimony.

 Hill also argues that there were several fatal variances between the indictment

and the evidence at trial. Hill failed to raise these issues at trial and they are waived

on appeal. However, we conclude that one of these fatal variance arguments is

meritorious and exercise our discretion under Rule 2 to suspend the appellate

preservation rules and consider that argument, which concerns the theft of money

and an iPod from a frozen yogurt shop. As explained in more detail below, the State

alleged the property belonged to Tutti Frutti, LLC, but it actually belonged to Jason

Wei, the son of the sole member of that limited liability company. Moreover, the State

failed to show that Tutti Frutti, LLC was in lawful custody and possession of Mr.

Wei’s property at the time it was stolen. Accordingly, we vacate that conviction but

reject Hill’s other fatal variance claims.

 Finally, Hill argues—and the State concedes—that the trial court’s award of

restitution is erroneous because it included restitution for a larceny for which Hill

was acquitted. We vacate the portion of Hill’s sentence concerning restitution and

remand this case for further proceedings on that issue.

 -2-
 STATE V. HILL

 Opinion of the Court

 Facts and Procedural History

 At or around 4:00 a.m. on 7 November 2013, a property manager for Bryan

Properties, Inc. received a call that the alarm for the Lumina Theater, one of the

properties her company manages at Southern Village in Chapel Hill, was going off

and police had been dispatched. Upon arrival, she learned that four other businesses

surrounding the theater had also been broken into, including Subway, Village

Pediatrics, Tutti Frutti (a frozen yogurt shop), and Town Hall Grill. The suspect

entered each business by shattering a glass window or door except for Town Hall Grill

where there was no entry because the glass did not shatter. A second property

manager pulled the surveillance videos from Lumina Theater, which showed a

suspect inside. Surveillance video also showed a person breaking into both Subway

and Village Pediatrics. Jason Wei, son of the owner of the Tutti Frutti store,1 also

turned over surveillance video and reported that his iPod had been taken but was not

sure if any money had been stolen. A physician at Village Pediatrics also reported

that her Hewlett-Packard laptop was missing from her office.

 Officers and investigators of the Chapel Hill Police Department arrived,

including Officer Shane Osborne. After reviewing the surveillance videos, he was

sure that he recognized the suspect as Caleb Hill. The Subway video gave Osborne

 1 More accurately, Mr. Wei’s father apparently is the sole member of Tutti Frutti, LLC, which
owns the store. We refer to Jason Wei as the “owner’s son” for consistency because that is how the
parties’ briefs describe him.

 -3-
 STATE V. HILL

 Opinion of the Court

the best opportunity to get a good look at the face of the suspect, and Osborne was

then “100 percent sure” it was Hill. Officer Osborne was familiar with Hill from prior

interactions with him. He and his partner, Officer Ragan Bradley Kramer, arrested

Hill in May 2013, and between then and 7 November 2013, had seen Hill

approximately ten to fifteen times in the community. Officer Osborne last saw Hill

approximately two weeks before the Southern Village break-ins.

 When Officer Osborne viewed the video footage, he recognized Hill based on a

number of factors. Osborne noticed Hill’s irregular, hunched-over posture and the

way he dragged his feet when he walked. He also noticed Hill’s distinctive facial

features, including the ridge line of his eyebrows, his nose, chin, and deep-sunken

eyes. Finally, Osborne saw that the person in the video wore the same clothes,

including unusually long and ill-fitting pants, worn by Hill in the previous encounters

between the two. Confident in his identification, Officer Osborne showed the video

to Officer Kramer, who also was familiar with Hill’s appearance. Officer Kramer

agreed that the suspect in the video was Hill.

 Police arrested Hill and questioned him at the police station. During the

questioning, Officer Osborne noticed a small piece of tempered glass on the floor near

Hill. Osborne suspected this glass may be related to the shattered glass doors at

Southern Village. When Osborne asked about the glass, Hill became very defensive

and refused to answer further questions.

 -4-
 STATE V. HILL

 Opinion of the Court

 At trial, the prosecution played the surveillance videos for the jury. Officer

Kramer and Officer Osborne testified that they believed the suspect in the

surveillance videos was Hill based on their familiarity with Hill’s distinctive features.

Hill moved to exclude the officer identification, and the trial court denied the motion.

Hill also moved to dismiss his charges at the close of the State’s case and the close of

all evidence. The trial court denied those motions as well.

 The jury returned a verdict of not guilty on one count of felony larceny but

convicted Hill on the remaining counts, including four counts of breaking and

entering, one count of attempted breaking and entering, two counts of felony larceny

after a breaking and entering, and five counts of injury to real property. Hill timely

appealed.

 Analysis

 Hill raises four issues on appeal: (1) whether the trial court erred in allowing

Officers Osborne and Kramer to testify that they believed Hill was the person seen

in the surveillance videos; (2) whether there were several fatal variances in the

indictments; (3) whether he received ineffective assistance of counsel; and (4) whether

the trial court erred in its restitution award. We address these issues in turn.

 I. Officer Testimony Concerning the Surveillance Videos

 Hill first argues that the trial court erred in allowing Officers Osborne and

Kramer to give their lay opinions that the person in the surveillance videos was Hill.

 -5-
 STATE V. HILL

 Opinion of the Court

Specifically, Hill alleges the officers were no better qualified than the jury to identify

the suspect in the videos and, therefore, he was prejudiced by the admission of their

testimony. We do not agree.

 We review the trial court’s decision to admit testimony for abuse of discretion.

State v. Washington, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000). Admissible

lay opinion testimony “is limited to those opinions or inferences which are (a)

rationally based on the perception of the witness and (b) helpful to a clear

understanding of his testimony or the determination of a fact in issue.” Id. This

Court has identified the following factors as relevant to determining whether a

witness’s identification of the defendant from surveillance footage is admissible:

 (1) the witness’s general level of familiarity with the
 defendant’s appearance;

 (2) the witness’s familiarity with the defendant’s
 appearance at the time the surveillance photograph
 was taken or when the defendant was dressed in a
 manner similar to the individual depicted in the
 photograph;

 (3) whether the defendant had disguised his appearance
 at the time of the offense; and

 (4) whether the defendant had altered his appearance
 prior to trial.

State v. Collins, 216 N.C. App. 249, 255–56, 716 S.E.2d 255, 260 (2011).

 Here, Officers Osborne and Kramer testified that they both had previous

interactions with Hill, including having arrested him in 2013. Officer Osborne

 -6-
 STATE V. HILL

 Opinion of the Court

testified that he had seen Hill some ten to fifteen times between May and November

2013. Osborne also testified that he had seen Hill approximately two weeks before

the Southern Village break-ins. Officer Kramer testified that he had seen Hill several

times and that he occasionally spoke to him. During his testimony, Officer Osborne

also narrated the surveillance video for the jury and pointed out the exact points in

the video where he was able to get a good look at the suspect. He referenced the

features of the person in the video—pronounced eyebrows, pointy nose, very set-in

eyes, cleft chin—as well as the person’s irregular posture and gait as factors which

helped him determine that the suspect was Hill based on his familiarity with Hill.

After viewing the video, Officer Osborne was “100 percent sure” Hill was the person

in the video and later asked Officer Kramer to view it. Kramer agreed that he too

was “100 percent sure” the suspect in the video was Hill. At trial, Officer Kramer

also pointed to Hill’s distinct facial features as the reason he recognized Hill.

 Moreover, Hill’s appearance changed between the time the crimes were

committed and the trial. Hill had grown a beard and lost weight by the time of trial.

Officer Osborne testified that Hill looked “very different. . . . [W]hen I dealt with

him he did not look like he does today.” In light of the officers’ familiarity with the

distinctive features of Hill’s face, posture, and gait, and Hill’s changed appearance,

we hold that the officers’ testimony was rationally based on their special knowledge

of Hill’s appearance and was helpful to the jury’s determination of whether Hill was

 -7-
 STATE V. HILL

 Opinion of the Court

the person seen in the video. Accordingly, the trial court did not abuse its discretion

in admitting the officers’ testimony.

 II. Fatal Variance Arguments

 Hill next argues that there was a fatal variance between the allegations in the

indictment and the evidence at trial. Hill concedes that he failed to preserve this

issue for appellate review but asks this Court to invoke Rule 2 of the Rules of

Appellate Procedure to review the issue. As explained below, we exercise our

discretion and invoke Rule 2 with respect to one of Hill’s arguments.

 This Court repeatedly has held that a “[d]efendant must preserve the right to

appeal a fatal variance.” State v. Mason, 222 N.C. App. 223, 226, 730 S.E.2d 795, 798

(2012); State v. Pender, __ N.C. App. __, 776 S.E.2d 352, 358 (2015). If the fatal

variance was not raised in the trial court, this Court lacks the ability to review that

issue. Mason, 222 N.C. App. at 226, 730 S.E.2d at 798. Rule 2 of the Rules of

Appellate Procedure permits this Court to suspend the rules regarding preservation

of issues for appeal. But this Court can invoke Rule 2 only in “exceptional

circumstances . . . in which a fundamental purpose of the appellate rules is at stake.”

Pender, __ N.C. App. at __, 776 S.E.2d at 358 (alteration in original).

 Hill first argues that there was a fatal variance between the allegation that he

stole an iPod and $5.00 from Tutti Frutti, LLC and the proof at trial, which showed

that the iPod and any stolen money belonged to Jason Wei, the son of the owner of

 -8-
 STATE V. HILL

 Opinion of the Court

the Tutti Frutti store. As explained below, we believe this argument has merit. We

therefore exercise our discretion to hear this issue despite Hill’s failure to preserve it

below. See State v. Gayton-Barbosa, 197 N.C. App. 129, 134–35, 676 S.E.2d 586, 589–

90 (2009).

 This issue requires us to reconcile seemingly inconsistent decisions from this

Court cited by the parties. In State v. Johnson, an indictment alleged that the

defendant stole two letter openers owned by a church, but the proof at trial was that

the letter openers belonged to a priest, not to the church. 77 N.C. App. 583, 585, 335

S.E.2d 770, 772 (1985). This Court held that the discrepancy amounted to a fatal

variance between the indictment and the proof. Id.

 By contrast, in State v. Graham, an indictment alleged that the defendant stole

money and a radio owned by the Maury Post Office, but the proof at trial was that

the money and radio belonged to the postmaster, not to the post office. 47 N.C. App.

303, 307, 267 S.E.2d 56, 59 (1980). This Court held that proof “that the post office is

not the owner of such property is not a fatal defect in such a case as this where the

property stolen was owned by the postmaster and he had left the property in the post

office.” Id. The Court explained that “[t]he post office was in lawful custody and

possession of the property at the time it was taken[.]” Id.

 These cases involve virtually identical factual scenarios, with the only

distinguishing factor being the apparent proof in Graham that the post office was in

 -9-
 STATE V. HILL

 Opinion of the Court

“lawful custody and possession” of the postmaster’s property. We are bound by all

past precedent of this Court and, in an effort to harmonize these decisions, conclude

that Graham applies only when there is proof at trial that the person named as the

property’s owner in the indictment was in “lawful custody and possession” of the

property, even if it actually was owned by someone else.

 Other cases confirm our interpretation of the distinction between the Johnson

and Graham holdings. For example, in State v. Liddell, the indictment alleged that

the defendant stole some cigarettes, money, and hamburger patties belonging to Lees-

McRae College. 39 N.C. App. 373, 374, 250 S.E.2d 77, 78 (1979). The proof at trial

showed that the property belonged to vendors who supplied the college’s vending

machines and cafeteria. Id. This Court affirmed the conviction, holding that the

evidence showed Lees-McRae College “was in lawful possession of the property at the

time of the offense” because it fit the “definition of a bailee.” Id. at 375, 250 S.E.2d at

79. Other cases from this Court have reached similar results. See State v. Holley, 35

N.C. App. 64, 67, 239 S.E.2d 853, 855 (1978); State v. Vawter, 33 N.C. App. 131, 136,

234 S.E.2d 438, 441 (1977). Accordingly, we hold that there is no fatal variance

between an indictment and the proof at trial if the State establishes that the alleged

owner of stolen property had lawful possession and custody of the property, even if it

did not actually own the property.

 - 10 -
 STATE V. HILL

 Opinion of the Court

 Here, the State points to no evidence at trial proving that Tutti Frutti, LLC

was in lawful custody and possession of Jason Wei’s money and iPod. Indeed, there

was no testimony at all concerning why Mr. Wei’s money and iPod were at the store.

Thus, we conclude that we are bound by Johnson and must vacate this count of

larceny after breaking and entering because of a fatal variance between the

indictment and the proof at trial.

 Hill also argues that there was a fatal variance between the allegation that the

broken windows and other real property at Southern Village belonged to Bryan

Properties and the proof at trial, which established that Bryan Properties merely

managed the property for some other owner. Unlike Mr. Wei’s iPod, there was

evidence at trial that Bryan Properties had “lawful custody and possession” of the

damaged property. Moreover, our Supreme Court recently held that an indictment

charging a defendant with damage to real property need only identify the real

property itself, not its owner, to be valid. State v. Spivey, __ N.C. __, __ S.E.2d __

(2016). Thus, unlike the allegations involving Tutti Frutti, we do not believe any

variance on the allegations concerning Bryan Properties would be fatal. We therefore

decline to invoke Rule 2 because this argument does not present the sort of

“exceptional circumstances . . . in which a fundamental purpose of the appellate rules

is at stake.” Pender, __ N.C. App. at __, 776 S.E.2d at 358.

 - 11 -
 STATE V. HILL

 Opinion of the Court

 III. Ineffective Assistance of Counsel

 Hill next contends that his counsel’s failure to raise the fatal variance issues

at trial deprived him of his Sixth Amendment right to the effective assistance of

counsel. Our conclusion that Hill’s fatal variance claim concerning damage to

property at Southern Village is meritless necessarily means that counsel’s failure to

raise that issue was not deficient performance. See Pender, __ N.C. App. at __, 776

S.E.2d at 358. Likewise, our conclusion that Hill’s fatal variance claim concerning

the money and iPod is meritorious, and that we will therefore excuse counsel’s failure

to preserve the issue below by invoking Rule 2, obviates our need to address counsel’s

performance on this issue.

 IV. Restitution

 Finally, Hill argues—and the State concedes—that the trial court erred by

ordering Hill to pay $698.08 in restitution for items taken from Village Pediatrics

because the jury acquitted Hill of the larceny charge concerning Village Pediatrics.

Both parties agree that the appropriate remedy is to vacate the portion of Hill’s

sentence imposing restitution and remand this case for further proceedings on the

issue of restitution. We agree, vacate the award of restitution, and remand to the

trial court for further proceedings.

 - 12 -
 STATE V. HILL

 Opinion of the Court

 Conclusion

 We vacate the count of felony larceny after a breaking and entering concerning

Tutti Frutti, LLC but affirm the remaining convictions. We vacate the restitution

award and remand for further proceedings consistent with this opinion.

 AFFIRMED IN PART; VACATED IN PART; VACATED AND REMANDED IN

PART.

 Judges STROUD and TYSON concur.

 - 13 -